EL VOCERO DE P.R. (CARIBBEAN INTERNATIONAL NEWS CORP.); CONDOMINIO PARQUE DE LAS FUENTES, demandantes y recurridos, *v.* JUNTA DE PLANIFICACIÓN, demandada y recurrente.

*Número:* RE-86-617      *Resuelto:* 21 de abril de 1988

*Emilio Vidal Pérez Rosado*, abogado de la recurrente; *Juan R. Marchand Quintero*, de *Rivera Cestero & Marchand Quintero*, abogado de los recurridos; *Rafael Ortiz Carrión, Procurador General*, y *Dora T. Peñagarícano Soler, Procuradora General Auxiliar*, en cumplimiento de resolución; *Héctor Russe Martínez*, abogado de la Junta de Calidad Ambiental de Puerto Rico, en cumplimiento de resolución.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Disponemos sobre el alcance de la enmienda introducida por la Ley Núm. 143 de 18 de julio de 1986 a la Regla 53.1(b) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). También en torno a si se ha convertido en académica la controversia sobre si la Junta de Planificación de Puerto Rico venía obligada a cumplir con las disposiciones de la Ley sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1121 y ss.

## I

El 7 de marzo de 1986, el periódico *El Vocero de Puerto Rico* y otros presentaron demanda para solicitar sentencia declaratoria, *mandamus* e *injunction* ante el Tribunal Superior, Sala de San Juan. Alegan que la Junta de Planificación de Puerto Rico (en adelante la Junta) se proponía promulgar

enmiendas sustanciales al Reglamento de Planificación Núm. 13, denominado *Reglamento sobre Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones*, sin tomar en cuenta las disposiciones de la Ley Núm. 9 de 18 de junio de 1970, conocida como Ley sobre Política Pública Ambiental, *supra*, así como del Reglamento sobre Declaraciones de Impacto Ambiental, promulgado por la Junta de Calidad Ambiental de Puerto Rico el 4 de julio de 1984.

En esencia, el planteamiento de los demandantes recurridos puede resumirse en que la Junta estaba llevando a cabo un proceso encaminado a enmendar el Reglamento de Planificación Núm. 13, sin cumplir con las disposiciones de la Ley Núm. 9, *supra*.

El foro de instancia concluyó que la Junta había comenzado a formular enmiendas globales al Reglamento de Planificación Núm. 13 desde comienzos de 1985, y que se encontraba preparada para la celebración de vistas públicas a ser celebradas durante el mes de marzo de 1986, a los fines de adoptar dicho reglamento.

Al dictar sentencia, el tribunal le ordenó a la Junta que se abstuviera de celebrar las referidas vistas públicas hasta tanto diera cumplimiento a la legislación ambiental y a las directrices que tuviera a bien formular la Junta de Calidad Ambiental. Ordenó, además, que "cuando la Junta de Planificación se prop[usiera] *promulgar* una Hoja 9 permanente para sustituir el Mapa Provi[s]ional que entró en vigor el 20 de agosto de 1986", tendría que "cumplir con la Ley 9 de 1970, el Reglamento [sobre Declaración de Impacto Ambiental, así como con] las directrices e interpretaciones de la Junta de Calidad Ambiental". (Énfasis suplido.) Anejo IX, pág. 149.

La Junta, no conforme con el dictamen de instancia, presentó ante nos la solicitud de revisión que nos ocupa por conducto de su propia representación legal. Solicita la revoca-

ción de la sentencia a base de que: (1) el caso ameritaba un juicio plenario; (2) que no se habían agotado los remedios administrativos, y (3) que los recursos de *mandamus, injunction* y sentencia declaratoria eran improcedentes.

En oposición, los demandantes recurridos sostienen que la controversia en cuestión es académica. Piden que se tome conocimiento judicial de un aviso de vistas públicas publicado en el periódico *El Mundo*, pág. 67, de 27 de noviembre de 1986. Nos señalan que en el último párrafo del aviso se anuncia que la Junta había preparado un documento mediante el cual se había evaluado el impacto ambiental de las enmiendas propuestas al reglamento de marras y el cual ya había sido sometido a la Junta de Calidad Ambiental el 18 de noviembre de 1986 para su consideración. La Junta se opuso.

Así las cosas, el 23 de diciembre de 1986 determinamos que no procedía el recurso de revisión por carecer de jurisdicción, por haberse presentado el mismo fuera del término jurisdiccional de treinta (30) días.

Posteriormente, la parte recurrente compareció y planteó que el plazo o término para presentar la revisión en este caso era sesenta (60) días y no treinta (30), a tenor con la enmienda que la Ley Núm. 143 , *supra*, introdujera a la Regla 53.1(b) de Procedimiento Civil de 1979, *supra.*

Oportunamente ordenamos a las partes, así como al Procurador General de Puerto Rico, que se expresaran sobre el alcance de la enmienda a la Regla 53.1(b) de Procedimiento Civil de 1979, *supra*, en lo referente a la ampliación del término para acudir en revisión a este Tribunal, cuando el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades, que no sean corporaciones públicas, son partes en un pleito. Ordenamos, además, que se expresaran sobre la aplicación de dicha regla a partes gubernamentales no representadas ante este Tribunal por el Procurador General, su aplicación a partes privadas en las circunstancias por ella previstas y a la Junta de Planificación

en particular, quien había comparecido ante nos representada por su propia representación legal y no mediante el Procurador General.

## II

Consideraremos primero el aspecto jurisdiccional y, por consiguiente, el alcance de las enmiendas introducidas a la Regla 53.1(b) de Procedimiento Civil de 1979, *supra*, por la Ley Núm. 143, *supra*, incluso los casos en que la entidad gubernamental no es representada ante este Tribunal por el Procurador General, sino por sus propios abogados como es el caso de autos.

La enmienda introducida a la Regla 53.1(b) de Procedimiento Civil de 1979, *supra*, dispone que:

> ... En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios, o una de sus instrumentalidades *que no fuere una corporación pública*, sean parte en un pleito, el recurso de revisión se formalizará, por cualquier parte, presentando una solicitud en la Secretaría del Tribunal Supremo dentro de los sesenta (60) días siguientes al archivo en autos de una copia de la notificación de la sentencia dictada por el Tribunal Superior. (Énfasis suplido.)

Por otra parte, el Art. 11(2) de la Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. sec. 62j(2), le confiere a ésta facultad para comparecer ante todos los tribunales de justicia y otros foros administrativos, representada por sus propios abogados o por cualquier abogado particular que al efecto contrate, a los fines de lograr el cumplimiento de la ley. No se trata de dos leyes en conflicto o de una ley general y otra especial, sino de dos materias distintas reguladas en forma distinta.

El Art. 14 del Código Civil, 31 L.P.R.A sec. 14, dispone que:

Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu.

Tal principio de interpretación legal general ha sido sostenido reiteradamente por nuestra jurisprudencia. *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50 (1984); *Lasalle v. J.A.C.L.*, 115 D.P.R. 805 (1984); *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467 (1982); *Rodríguez v. Fidelity Bond Mortg. Corp.*, 108 D.P.R. 156 (1978).

El texto de la Ley Núm. 143, *supra*, es claro y su contenido no da margen a establecer distinciones entre agencias o funcionarios que recurran ante nos representados por el Procurador General y aquellas agencias públicas que comparezcan por sí mismas. Esta ley proveyó al Estado Libre Asociado de Puerto Rico, a sus instrumentalidades y a sus funcionarios gubernamentales, que no sean una corporación pública, un término de sesenta (60) días para presentar el recurso de revisión ante nos. La misma claramente excluye a las corporaciones públicas, sin distinguir entre aquellas que operan como negocios o empresas privadas y las que no tienen dicha característica.

Por otra parte, la enmienda a la Regla 53.1(b) de Procedimiento Civil de 1979, *supra*, no altera términos más cortos establecidos por leyes especiales.

En cuanto a la extensión de la aplicabilidad de la referida ley a otras partes públicas o privadas, el texto es claro. En lo pertinente, dispone que el término para recurrir al Tribunal Supremo en recurso de revisión se extiende a sesenta (60) días para *cualquier parte* en el pleito.

Cualquier parte en el pleito, sea ésta demandante, demandada, tercero demandante, tercero demandado o *interventor*, entre otros, tiene el beneficio del término de sesenta (60) días provistos por la Regla 53.1(b) de Procedi-

miento Civil de 1979, *supra*. En el ámbito federal, la Regla 4(a) de las Reglas Federales sobre Procedimientos Apelativos, 28 U.S.C., junto con 28 U.S.C. sec. 2107, es sustancialmente igual a nuestra Regla 53.1(b), según enmendada. Allí, en los casos en que Estados Unidos o un funcionario o agencia de Estados Unidos fuere parte en un pleito civil, la apelación se formalizará dentro de los sesenta (60) días del archivo en autos de una copia de la notificación de la sentencia apelada del Tribunal de Distrito al Tribunal de Apelaciones de Estados Unidos.

El Informe de la Comisión de lo Jurídico del Senado de Puerto Rico, sobre el P. del S. 841 de 7 de mayo de 1986, relacionado con la Regla 53.1(b) de Procedimiento Civil de 1979, *supra*, citó con aprobación los comentarios del Comité Asesor de la Conferencia Judicial de Estados Unidos que recomendó la aprobación de la enmienda a la regla federal. El mismo expresó que la ampliación del plazo beneficiaba a todas las partes en el pleito y cualquiera de ellas podría presentar el escrito de apelación en igual término de sesenta (60) días.

■ Resumiendo, la Junta es una instrumentalidad, aunque no una corporación pública, del Estado. La facultad concedida en su ley orgánica de comparecer a los tribunales mediante sus propios abogados no desvirtúa su naturaleza de agencia pública. Por ello le beneficia el término de sesenta (60) días para recurrir ante nos, ya sea que esté representada por el Procurador General o por sus propios abogados.

### III

Nos resta por considerar los méritos de la solicitud de revisión presentada por la demandada recurrente, así como las alegaciones vertidas en la oposición de los demandantes recurridos.

La Junta cuestiona la sentencia dictada por el Tribunal Superior, que le ordenó abstenerse de celebrar vistas pú-

blicas sobre la adopción del Reglamento de Planificación Núm. 13, hasta tanto preparara el documento ambiental pertinente, por razón de que ella no había plasmado la versión final del mismo. Por su parte, los recurridos plantean que estamos frente a un recurso que es a todas luces académico.[1]

■ Los tribunales de justicia existen para resolver controversias genuinas surgidas entre partes opuestas que tengan un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas. *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

■ En *E.L.A. v. Aguayo*, supra, pág. 584, expusimos lo que constituye un caso académico, citando de *Ex parte Steele*, 162 F. 694, 701 (N.D. Ala. 1908):

> . . . que un caso académico . . . es "uno en que se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón *no podrá tener efectos prácticos sobre una controversia existente*". (Énfasis suplido.)

■ El concepto de academicidad recoge la situación en que, aun cumplidos todos los requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia tornan en académica o ficticia su solución. Los fundamentos en que se apoya dicha doctrina son: "(1) evitar el uso innecesario de los recursos judiciales; (2) asegurar [la existencia de] suficiente contienda adversa-

---

[1] El asunto sobre en qué momento la Junta de Planificación de Puerto Rico (en adelante la Junta) viene obligada a cumplir con la Ley de Política Pública Ambiental, en qué situaciones y de qué manera, así como la relación legal entre ésta y la Junta de Calidad Ambiental, no es un asunto que podamos considerar bajo las circunstancias del presente caso.

tiva sobre las controversias para que sean competentes y vigorosamente presentad[as ambas partes]; y (3) evitar un precedente innecesario." *Com. de la Mujer v. Srio. de Justicia,* supra, pág. 725.

Se han elaborado también una serie de excepciones a la aplicación de la doctrina de academicidad. Éstas cobran vigencia en aquellos casos en los que, aun cuando la decisión del tribunal no afecta a las partes involucradas, presenta una cuestión recurrente o repetitiva del asunto planteado —*Roe v. Wade,* 410 U.S. 113 (1973); *Moore v. Ogilvie,* 394 U.S. 814 (1969); *So. Pac. Terminal Co. v. Int. Comm. Comm.,* 219 U.S. 498 (1911)— en aquellos casos en que la propia parte demandante termina voluntariamente su conducta ilegal —*Com. de la Mujer v. Srio. de Justicia,* supra; *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283 (1982)— y en aquellos donde la situación de hechos ha sido cambiada voluntariamente por el demandado, pero que no tiene visos de permanencia, *United States v. W.T. Grant Co.,* 345 U.S. 629 (1953). De igual manera se plantea una excepción cuando en un caso se ha certificado por el tribunal una clase, de conformidad con la Regla 20 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), y la controversia se torna académica para un miembro de la clase, mas no para el representante de la misma, *Sosna v. Iowa,* 419 U.S. 393 (1975); *Franks v. Bowman Transportation Co.,* 424 U.S. 747 (1976), y en los casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico,* San Juan, Ed. C. Abo. P.R., 1986, Vol. I, págs. 122–126; L.H. Tribe, *American Constitutional Law,* 2da ed., Nueva York, The Foundation Press, 1988.

Si luego de la debida investigación se comprueba que no existe una controversia genuina, es deber del tribu-

nal, dependiendo de las circunstancias del caso, desestimar el recurso desde su incepción o desestimar la revisión sin considerar el mérito de los planteamientos. *E.L.A. v. Aguayo*, supra, págs. 561–562.

La Junta nos plantea que el error cometido por el tribunal a quo consistió en confundir la controversia real del caso. Sostiene que no estaba en controversia si ella debía o no preparar un documento ambiental antes de celebrar vistas públicas, puesto que ya se había comprometido de antemano a prepararlo. Su argumento medular estriba en sostener que no era mandatorio preparar y someter el informe sobre impacto ambiental, puesto que aún no se había plasmado la versión final del Reglamento de Planificación Núm. 13.

Los alegados errores que se traen a nuestra atención se circunscriben, en última instancia, a si la Junta venía obligada o no a preparar una declaración de impacto ambiental antes de formular las enmiendas propuestas al Reglamento de Planificación Núm. 13.

Luego que el tribunal de instancia dictara sentencia, en que ordenaba a la Junta que se abstuviera de celebrar Vistas Públicas respecto a la adopción del Reglamento de Planificación Núm. 13, hasta tanto cumpliera con la Ley de Política Pública Ambiental, ésta publicó en la prensa un aviso de vistas públicas a celebrarse durante el mes de diciembre de 1986. En el mismo anunció que había preparado un documento ambiental en el que se había evaluado el impacto ambiental que pudieran tener las enmiendas propuestas al Reglamento de Planificación Núm. 13 y que el mismo le fue sometido a la Junta de Calidad Ambiental.

La Junta celebró vistas públicas relacionadas a la adopción del reglamento el 12 de diciembre de 1986 en los municipios de San Juan, Ponce y Mayagüez y, luego de ponderar los planteamientos vertidos en esas vistas, adoptó el Reglamento de Planificación Núm. 13 el 18 de febrero de 1987.

Ante estos hechos nos encontramos con un caso académico. La Junta, al presente, ha cumplido con lo ordenado en la sentencia dictada por el tribunal de instancia. Tampoco están presentes las excepciones aquí expuestas a la doctrina de academicidad. La Junta, tanto en el foro de instancia como en su comparecencia ante nos, ha expresado que acatará la Ley Núm. 9, *supra*. Así lo indicó en la declaración jurada de uno de sus miembros asociados sometida junto con su oposición a la sentencia.

La revisión ante nos es sobre la sentencia y no sobre sus fundamentos. *Collado v. E.L.A.*, 98 D.P.R. 111 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776 (1964). Nuestra intervención implicaría emitir una opinión sobre una controversia que ha dejado de existir.

## IV

Finalmente atenderemos el dictamen emitido en la sentencia de instancia, en el sentido de que la Junta deberá cumplir con la Ley Núm. 9, *supra*, el Reglamento sobre Declaraciones de Impacto Ambiental y las directrices de la Junta de Calidad Ambiental, cuando se proponga *promulgar* una Hoja 9 permanente para sustituir el mapa provisional que entró en vigor el 20 de agosto de 1986.

Los demandantes de autos habían alegado en su demanda que la Junta tenía el deber de preparar una declaración de impacto ambiental cuando se propusiera enmendar la Hoja 9. Sin embargo, sobre dicha alegación no se trabó controversia alguna.

Un examen cuidadoso de los autos refleja que no se desfiló prueba ni se discutió este aspecto durante la vista del caso celebrada el 2 de octubre de 1986. Las alegaciones de una demanda sólo tienen el propósito de notificar a grandes rasgos las reclamaciones y defensas de las partes. *Polanco v. Tribunal Superior*, 118 D.P.R. 350 (1987); *Sierra v. Tribu-*

*nal Superior*, 81 D.P.R. 554 (1959). Por ello le correspondía a los demandantes sustanciar con prueba la validez de sus alegaciones, cosa que no hicieron en este caso.

Por otra parte, surge de los autos que para que la Junta pueda enmendar la referida Hoja 9 es necesario, precisamente, que se inicie el estudio para delimitar el cauce mayor del Río Piedras y ello ni siquiera ha comenzado.

▮ Cuando la controversia planteada en un caso no está completa o lista para adjudicación, la opinión que emita el Tribunal es de naturaleza consultiva. Serrano Geyls, *op. cit.*, pág. 195. No es la función de los tribunales brindar asesoramiento o producir decisiones en el abstracto y bajo hipótesis de índole especulativa. *Hernández Agosto v. Betancourt*, 118 D.P.R. 79, 86–87 (1986); *Com. de la Mujer v. Srio. de Justicia*, supra, pág. 721; *E.L.A. v. Aguayo*, supra, págs. 558–560.

El único fundamento fáctico para dicho dictamen fue el siguiente: "El Tribunal *toma conocimiento judicial* de que la Junta de Planificación recientemente restituyó la Hoja 9 del Mapa de Zonas Susceptibles a Inundaciones por un Mapa Provisional de Zonas Inundables." (Énfasis suplido.) Anejo IX, pág. 149.

Concluimos, por ello, que el dictamen del tribunal de instancia —que impone a la Junta el deber de cumplir con la Ley Núm. 9, *supra*, el Reglamento sobre Declaraciones de Impacto Ambiental y las directrices de la Junta de Calidad Ambiental, cuando se proponga *promulgar*(2) una Hoja 9

---

(2) El *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1110, define *promulgar* de la manera siguiente: "Publicar una cosa solemnemente; hacerla saber a todos. 2. fig. Hacer que una cosa se divulgue y propague mucho en el público. 3. *Der. Publicar formalmente una ley* u otra disposición de la autoridad, a fin de que sea cumplida y hecha cumplir como obligatoria." (Énfasis suplido.) La promulgación de un reglamento es la publicación del mismo. Su aprobación ocurre en una etapa anterior a dicha promulgación.

permanentemente para sustituir el mapa provisional que entró en vigor el 20 de agosto de 1986— fue prematuro y de naturaleza consultiva. La intervención con este asunto, cuando todavía no se han iniciado los estudios necesarios para promulgar la Hoja 9 permanente, es un pronunciamiento en abstracto de índole consultiva. El hecho de que se trate de una demanda titulada sentencia declaratoria, *mandamus* e *injunction* no altera esta conclusión.

En vista de lo expuesto, *se expide el recurso y se modifica la sentencia del tribunal de instancia.*

El Juez Asociado Señor Ortiz se inhibió.

Ley sobre Reglamentos de 1958, según enmendada, 3 L.P.R.A. sec. 1041 y ss. La Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. secs. 63 y 63a) contiene disposiciones particulares para la vigencia y promulgación de los reglamentos, planes, programas, planos y mapas de dicha agencia.