Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| ROCK SOLID TECHNOLOGIES, INC.<br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE BAYAMÓN<br>Recurrida | KLRA202300551 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio Autónomo de Bayamón<br><br>Caso Núm. SP-2022-23-09<br><br>Sobre: Adquisición y/o Desarrollo de un Sistema de Información |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 9 de febrero de 2024.

Comparece Rock Solid Technologies, Inc. (Rock Solid o recurrente), solicitando que revoquemos una notificación de subasta, **Resolución Núm. 39**, referente a la solicitud de propuestas SP-2022-23-09, que fue emitida y notificada el 11 de octubre de 2023, por la Junta de Subastas del Municipio de Bayamón (Junta de Subastas o el Municipio, según corresponda). Mediante dicho dictamen administrativo se adjudicó la *Adquisición y/o desarrollo de un sistema de información integrado para automatizar y administrar los procesos de las dependencias y los servicios a la ciudadanía del Municipio de Bayamón,* a dos licitadores, Consulting 2 Success LLC (CS2), e Interboro Systems Group, UKG Company (Interboro).

En su muy bien fundamentado *recurso de revisión judicial,* Rock Solid alzó señalamientos sobre: (1) alegados defectos en la notificación de la adjudicación de la subasta y; (2) en la evaluación y adjudicación de la buena

*pro*, enumerando una serie de fallas que calificó de fatales, por adjudicarse a propuestas que no fueron responsivas (no cumplieron con la Solicitud de Propuesta), resultaban de mayor gasto al erario y revelaban una determinación irrazonable, arbitraria, caprichosa, constitutiva de abuso de discreción.

Sin embargo, mientras se perfeccionaba el recurso de revisión judicial ante nuestra consideración, acontecieron eventos que tornaron en académicas las controversias a dirimir, por lo que ya no es justiciable. En específico, luego de presentado el *recurso de revisión judicial*, el Municipio acogió una recomendación de su Junta de Subasta para cancelar la adjudicación de la subasta que está siendo impugnada ante nosotros por Rock Solid, emitiendo una determinación administrativa al respecto que, eventualmente, advino final y firme.

Acentuamos desde estos párrafos introductorios que **no** consideramos que la sola cancelación de la subasta tornara en académico el *recurso de revisión judicial* presentado, pero sí tuvo dicho efecto el hecho de que tal determinación administrativa hubiese advenido final y firme, sin que algún licitador, (que bien pudiera haber sido el mismo Rock Solid), la hubiese impugnado dentro de los términos correspondientes.

**I. Resumen del tracto procesal**

El 26 de septiembre de 2024, el Municipio publicó un Aviso de Solicitud de Propuesta con el alfanumérico SP-2022-23-09 (el Aviso) en el periódico Primera Hora. El anuncio tuvo como propósito notificar a posibles licitadores interesados en someter propuestas para proveer un sistema de información integrado para automatizar y administrar los procesos de las dependencias y los servicios a la ciudadanía del Municipio. Se incluyó en el *Aviso* información relativa a la disponibilidad del *Pliego* de requerimientos, la fecha pautada de una reunión mandatoria para los interesados, y el costo de los documentos.

Luego de superadas sendas reuniones preparatorias con los proveedores de servicios interesados en ofrecerlos, el 22 de febrero de 2023,

el Municipio celebró la apertura de la *Solicitud de Propuesta.* El recurrente figuró como uno de los ocho licitadores que sometieron propuestas.

Pasados varios meses, el 21 de septiembre de 2023, el Comité Evaluador (el Comité) recomendó adjudicar la buena pro a CS2, aseverando que: fue el licitador que presentó la propuesta más completa, pues ofrecía una plataforma en la nube, de clase mundial, con componentes que se integraban entre sí y un *partner* con un plan de ejecución sólido; estimaba un término de doce meses para la fase de preparación, exploración, realización, despliegue y *go-live;* obtuvieron la mayor puntuación con relación a los demás licitadores.

De igual forma, el Comité recomendó la adjudicación de la buena pro a Interboro, señalando que la propuesta de esta se concentró en los terminales biométricos "ponchadores" y su instalación y mantenimiento, que resultaba en el complemento perfecto para la propuesta de CS2.

Cónsono con tales recomendaciones, la Junta de Subasta emitió la *Resolución 39* adjudicando la buena pro a C2S y a Interboro. Esta determinación fue notificada a los licitadores el 11 de octubre de 2023.

Insatisfecho, el 18 de octubre de 2023, Rock Solid envió una carta al Municipio, solicitando revisar el expediente sobre el proceso y expresando que la adjudicación carecía de fundamentos válidos que guardaran relación con la adjudicación efectuada. Al próximo día, 19 de octubre, el recurrente se presentó al Municipio y tuvo oportunidad de examinar el expediente.

A raíz de lo anterior, el 23 de octubre de 2023, Rock Solid presentó una *Moción de Reconsideración* ante la Junta de Subastas. Aseveró allí que tanto la notificación de la subasta como su adjudicación resultaban incorrectos, y procedía que la propuesta instada por CS2 fuera rechazada de plano, pues no cumplía con las especificaciones del Pliego, ni representaba el mayor valor y beneficio para el Municipio. Además, afirmó que la propuesta que fue presentada por Rock Solid cumplía y sobrepasaba los criterios requeridos por el Municipio para la adjudicación de la referida subasta, por lo que la

puntuación que le otorgaron fue una caprichosa y arbitraria que no se sostenía por el expediente.

Simultáneamente, es decir, en la misma fecha y hora, el recurrente acudió a nosotros, mediante *recurso de revisión judicial*, haciendo los siguientes señalamientos de error:

**PRIMER ERROR:** ERRÓ EL COMITÉ EVALUADOR Y LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN AL INCUMPLIR CON LOS REQUISITOS DE EVALUACIÓN Y ADJUDICACIÓN DE LA SOLICITUD DE PROPUESTA Y PROCEDER CON UNA NOTIFICACIÓN DE ADJUDICACIÓN ILEGAL, INADECUADA E INVÁLIDA.

**SEGUNDO ERROR:** ERRÓ EL MUNICIPIO DE BAYAMÓN EN ADJUDICAR LA BUENA PRO DE LA SP-2022-23-09 A FAVOR DE CONSULTING 2 SUCCESS, LLC, AUN CUANDO FUE UN LICITADOR NO RESPONSIVO, UN ERROR INSUBSANABLE.

**TERCER ERROR:** ERRÓ EL MUNICIPIO DE BAYAMÓN EN ADJUDICAR DE FORMA ILEGAL, IRRAZONABLE, ARBITRARIA, CAPRICHOSA, CONSTITUTIVA DE UN CRASO ABUSO DE DISCRECIÓN, LA BUENA PRO DE LA SP-2022-23-09, AL CONCLUIR QUE RST NO CUMPLIO CON TODOS LOS CRITERIOS DEL PLIEGO.

**CUARTO ERROR:** ERRÓ EL COMITÉ EVALUADOR Y LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN EN SU ANÁLISIS DE CRITERIOS, PROPUESTAS Y DEL EXPEDIENTE.

**QUINTO ERROR:** ERRÓ EL MUNICIPIO DE BAYAMÓN EN ADJUDICAR LA BUENA PRO DE LA SP-2022-23-09 A FAVOR DE CONSULTING 2 SUCCESS, LLC, A PESAR DE LA ILEGALIDAD DE ALGUNOS ELEMENTOS DE SU PROPUESTA.

Al presentar el *recurso de revisión judicial* ante nuestra atención el recurrente no incluyó una petición de auxilio de jurisdicción. Es decir, la parte promovente de la impugnación de la subasta, identificada como *Resolución 39*, no solicitó la paralización de los procesos en el Municipio, mientras estuviera pendiente por resolver el asunto ante nuestra atención.

Como resultado del *recurso de revisión judicial* instado, mediante *Resolución* del 6 de noviembre de 2023, le concedimos un término de cinco días a las demás partes para que se expresaran.

No obstante, el Municipio acudió ante nosotros el mismo día en que expedimos la *Resolución* aludida, mediante *Moción Informativa y en Solicitud de Desestimación,* aseverando que la Junta de Subastas había reconocido

algunas deficiencias que afectaron la SP-2022-23-09, que ameritaban una reevaluación de la adjudicación de la subasta. Añadió que, por causa de la referida reevaluación, el 3 de noviembre de 2023, la Junta había aprobado la ***Resolución Núm. 47***, (que incluyó como anejo), **dando lugar a la cancelación de la subasta**. En consecuencia, sostuvo que la cancelación de la subasta que estaba siendo impugnada por Rock Solid ante nosotros, convertía en académico el *recurso de revisión judicial*, pues ya no existía un caso o controversia que adjudicar, de aquí que solicitara la desestimación.

Además, al próximo día, 7 de noviembre de 2023, el Municipio también presentó una *Moción Informativa y en Cumplimiento de Resolución*, en la que aludió a la moción discutida en el párrafo que antecede, y solicitó que diéramos por cumplida nuestra *Resolución* de 6 de noviembre de 2023.

De conformidad, el 8 de noviembre de 2023, concedimos un término de cinco días a Rock Solid para que se expresara en torno a la solicitud de desestimación instada por el Municipio.

De manera oportuna, el 15 de noviembre de 2023, la parte recurrente presentó una *Oposición a Moción de Desestimación*. En su escrito Rock Solid alegó falta de notificación de la cancelación de la subasta por el Municipio, señalando que este último no había presentado evidencia alguna que respaldara su afirmación de haber retirado la adjudicación impugnada. Sostuvo, además, que el hecho de que la parte recurrida admitiera que se le daría más consideración al asunto y se volvería a adjudicar la subasta, sin proporcionar información concreta sobre cómo se abordarían los errores aludidos, ni dar garantía alguna de que estos no se repetirían en el nuevo proceso de adjudicación, convertían la notificación sobre cancelación en una caprichosa, no ajustada a derecho. Añadió que, uno de los principios importantes del proceso de subasta es que los licitadores no deben conocer las ofertas contrarias, evitando así obtener ventajas indebidas y poder modificar las suyas. A pesar de tal principio, la cancelación de la subasta bajo discusión lo frustra, permitiendo que los licitadores contrarios ya conozcan

de antemano las propuestas que se ofrecieron, para así poderlas ajustar en un proceso posterior y el Municipio elegir a quién quiere favorecer.

Examinada la respuesta de Rock Solid a la petición de desestimación del Municipio, el 16 de noviembre de 2023, ordenamos a este último que se expresara sobre los argumentos allí contenidos.

A tenor, el 21 de noviembre de 2023, el Municipio presentó una *Moción en cumplimiento de resolución de 16 de noviembre de 2023 y réplica a oposición a solicitud de desestimación*. Inició señalando que, al presentar el *recurso de revisión judicial* ante nuestra atención, Rock Solid no solicitó la paralización de los procedimientos sobre la subasta adjudicada mediante la *Resolución 39*. Añadió que, en términos procesales, la alegación de incumplimiento que hizo el recurrente estaba dirigida a cuestionar, en los méritos, la *Resolución 47*, mediante la cual se determinó la cancelación de la subasta, que era una determinación administrativa final que debía ser objeto de otro recurso de revisión, no bajo el recurso que solicitaba la revisión de la *Resolución 39*. Por tanto, sostuvo que este Foro intermedio no tiene jurisdicción para dilucidar en los méritos asuntos relativos a la determinación final sobre la *Resolución 47*. En cuanto a la alegación de la recurrente sobre la presunta falta de notificación, sostuvo que la *Resolución 47* si les fue notificada por correo certificado y con acuse de recibo, el 3 de noviembre de 2023, sin embargo, al 17 de noviembre de 2023, la parte recurrente no había acusado el recibo de esta. Concluyó que, pasados los términos para impugnar la determinación sobre cancelación de subasta, recogida en la *Resolución 47*, este dictamen había advenido final y firme, tornando el recurso de revisión judicial referente a la *Resolución 39* en académico.

Posteriormente, las partes intercambiaron sucesivas mociones sobre este caso, ninguna de las cuales contó con la autorización de este Tribunal.

Estamos en posición de decidir.

## II. Exposición de Derecho

### B. Academicidad

Los tribunales solo están llamados a atender asuntos de carácter justiciable. La doctrina de justiciabilidad exige la adjudicación de controversias genuinas entre partes opuestas, que tienen un interés legítimo en obtener un remedio capaz de afectar sus relaciones jurídicas, permitiendo, de ese modo, la intervención oportuna y eficaz de los tribunales. *Lozada Tirado et al. v. Testigos Jehová,* 177 DPR 893, 908 (2010); *E.L.A. v. Aguayo*, 80 DPR 554, 558-559 (1958). Este principio constituye una autolimitación al ejercicio del Poder Judicial consagrado en nuestra Constitución. *Íd.*

En virtud de lo anterior, se reconoce que la doctrina de la academicidad da vida al principio de justiciabilidad. *Bathia Gautier v. Gobernador*, 199 DPR 59 (2017); *Moreno v. Pres. U.P.R. II,* 178 DPR 969, 973 (2010); *Crespo v. Cintrón*, 159 DPR 290, 298 (2003). Como norma, un caso es académico ***cuando los cambios fácticos o procesales ocurridos durante su trámite convierten la controversia en una ficticia, de modo tal que el fallo que emita el tribunal no tendría efectos prácticos por tratarse de un asunto inexistente***. (Énfasis provisto). *Lozada Tirado et al v. Testigos Jehová,* supra*, pág. 908.

Las diferentes justificaciones que se esbozan para requerir que un caso no sea académico antes de resolverse el mismo son: (1) evitar el uso innecesario de los recursos judiciales; (2) asegurar suficiente contienda adversativa sobre las controversias para que sean competentes y vigorosamente presentados ambos lados; y (3) evitar un precedente innecesario. *Emp. Pur. Des., Inc. v. H.I.E.Tel.*, 150 DPR 924 (2000), citando a *Noriega Rodríguez v. Hernández Colón,* 135 DPR 406, 437 (1994). Un caso puede resultar académico si el transcurso del tiempo ha causado que éste pierda su condición de controversia viva y presente. *Íd.*

No obstante, nuestro ordenamiento jurídico ha reconocido algunas excepciones que permiten que se considere un caso posiblemente académico, a saber: cuando se plantea una cuestión recurrente; si la situación de hechos ha sido modificada por el demandado, pero no tiene características de permanencia; o donde aspectos de la controversia se tornan académicos, pero persisten importantes consecuencias colaterales. *Cruz v. Administración,* 164 DPR 341, 359 (2005); *El Vocero v. Junta de Planificación,* 121 DPR 115, 124 (1988).

**B. Sobre la Revisión Judicial de las Decisiones Administrativas**

a.

El Art. 4.002 de la Ley Núm. 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, según enmendada, (Ley de la Judicatura), dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, **las decisiones finales** de los organismos y agencias administrativas que hayan sido tramitadas conforme con las disposiciones de la Ley de Procedimiento Administrativo Uniforme (LPAU)". (Énfasis provisto). Art. 4.002 de la Ley Núm. 201-2003, 4 LPRA sec. 24 (u).

El Código Municipal de Puerto Rico dispone, en lo pertinente, que el Tribunal de Apelaciones revisará el acuerdo final o adjudicación de la Junta de Subastas. Artículo 1.050 de la Ley 107-2020.

De igual forma, la Regla 56 del Reglamento de este Tribunal dispone: *esta parte gobernará el trámite de las revisiones de todos los recursos instados ante el Tribunal de Apelaciones para la revisión de las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley.* 4 LPRA Ap. XXII-B, R. 56.

b.

Por otra parte, el Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, (Ley de la Judicatura), 4 LPRA sec.

24(y)(c), dispone, en lo pertinente, que la mera presentación del recurso de revisión judicial *no paralizará el trámite en el organismo o agencia administrativa.*

La Regla 61 del Reglamento del Tribunal de Apelaciones se expresa en iguales términos al advertir que la presentación de un recurso de revisión, *no tendrá el efecto de paralizar la implantación de una regla o reglamento, orden, resolución o determinación de una agencia, funcionario o funcionaria, o la adjudicación de una subasta impugnada.* Sin embargo, a solicitud de parte, el Tribunal de Apelaciones *podrá emitir una orden en contrario, no sin antes conceder un término a las demás partes para que se expresen en torno a la solicitud de paralización. No obstante, si el tribunal determina que por la urgencia del asunto no es posible oír a las demás partes, podrá dictar dicha orden de forma temporera y conceder posteriormente término a las demás partes para que se expresen antes de resolver finalmente el asunto.* 4 LPRA Ap. XXII-B, R. 61.

**C. La Subasta**

La subasta es uno de los vehículos procesales que tanto el gobierno central como los municipios utilizan para la adquisición de bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019). El propósito primordial es proteger el erario fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles. Con ello, se pretende maximizar la posibilidad de obtener el mejor contrato, mientras se protegen los intereses y activos públicos. La idea es que este mecanismo aumenta la probabilidad de que se obtengan "los precios más económicos" y de que se eviten "el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido". *PR Eco Park et al.*, supra.

Las subastas que celebran los municipios están reglamentadas por la Ley 107-2020 ("Ley 107") y por el Reglamento para la Administración Municipal Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales

de 19 de diciembre de 2016 (el "Reglamento")[1]. *PR Eco Park et al.*, supra. Este estatuto establece los procedimientos a seguir para la celebración y adjudicación de subastas municipales. Respecto a la adjudicación de la subasta, allí se dispone que, "[c]uando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo". Art. 2.040 de la Ley 107. La citada ley añade que:

> La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.

Por otro lado, el derecho de revisión judicial que poseen los licitadores o participantes de estos procesos se encuentra de igual manera reglamentado por la ley bajo examen. Véase Art. 1.050 de la Ley 107-2020; *Puerto Rico Eco Park, Inc.*, 202 DPR a las págs. 533-534. Al respecto, como señaláramos, este Tribunal "revisará, el acuerdo final o adjudicación de la Junta de Subastas" y que el recurso deberá presentarse "dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación". Art. 1.050 de la Ley 107.

## III. Aplicación del Derecho a los hechos

### a.

Según adelantamos, presentado por Rock Solid el *recurso de revisión judicial* bajo nuestra atención, –en el que se impugnó la adjudicación de la subasta identificada por la *Resolución 39*–, el Municipio instó una petición de desestimación, por vía de la aprobación de la *Resolución 47*. En específico, en su *Moción informativa y en solicitud de desestimación*, de 6 de noviembre de 2023, el Municipio planteó que procedía la desestimación del *recurso de*

---

[1] La Ley 81-2017 eliminó la Oficina del Comisionado de Asuntos Municipales (OCAM) y transfirió algunas de sus funciones a la Oficina de Gerencia y Presupuesto. No obstante, los reglamentos, memorandos circulares, circulares informativas y otros documentos emitidos por la OCAM, y que reglamentan los procedimientos administrativos y fiscales de los municipios, se mantienen en vigor en lo que no sean contrarios a las disposiciones de la Ley 81-2017.

*revisión judicial,* por cuanto había advenido en académica la controversia sobre la adjudicación de la subasta impugnada, es decir, no justiciable, al haber sido cancelada mediante la aprobación de la *Resolución 47.*

No tiene razón el Municipio al promover la teoría de que la mera cancelación de la adjudicación de la subasta que estaba siendo impugnada, tuvo el efecto de provocar la academicidad del *recurso de revisión judicial* ante nuestra consideración. Precisamente, en *RBR Const., S.E. v. A.C.,* 149 DPR 836 (1999), nuestro Tribunal Supremo, ante una situación análoga, advirtió que la posterior cancelación de una subasta que está siendo impugnada ante el Tribunal, no necesariamente tiene el efecto de tornar en académica la controversia sobre la razonabilidad de la adjudicación de la subasta.

En la Opinión citada el Alto foro reconoció que, si bien es cierto que las agencias públicas, (extensible aquí el razonamiento a las municipalidades), tienen la discreción para anular una subasta en cualquier momento antes de la formalización del contrato, este ejercicio no está exento de responsabilidad. Sobre lo mismo, manifestó ese Foro que, tanto el abuso de derecho como su ejercicio arbitrario podrán ser fuentes de responsabilidad, por lo que **la cancelación de una subasta no puede obedecer a fundamentos irrazonable y arbitrarios**. (Énfasis provisto). *Íd*, págs. 851-853.

Al decidir así, el Tribunal Supremo subrayó que *los tribunales tenemos el deber de asegurar que, al efectuar sus gestiones de compra y contratación, las instrumentalidades públicas cumplen con la ley, con sus propios procedimientos y que tratan de forma justa a los licitadores. En fin, que los dineros del pueblo se gastan en beneficio del interés público. No debemos perder de perspectiva que el Gobierno es el comprador y contratante más grande del país. La adecuada fiscalización de la utilización de los dineros del erario resulta de vital importancia para mantener la confianza del ciudadano en el Gobierno y una democracia saludable.* Íd, pág. 856. A lo que a renglón seguido añadió que, *si bien es cierto que debemos gran deferencia a las determinaciones de las agencias administrativas, cuando éstas no se*

*encuentran sustentadas por evidencia sustancial en el récord o cuando son*

*irrazonables, nada nos impide intervenir.[2] Íd.*

Claro, a lo anterior se debe añadir que la jurisprudencia ha reconocido excepciones que permiten que se considere un caso posiblemente académico, según ya citamos: cuando se plantea una cuestión recurrente; si la situación de hechos ha sido modificada por el demandado, pero no tiene características de permanencia; o donde aspectos de la controversia se tornan académicos, pero persisten importantes consecuencias colaterales. *Cruz v. Administración,* supra. Dado que la adjudicación de una subasta conlleva el desembolso del erario, y el proceso de subasta está revestido del más alto interés público, aspirando a promover la sana administración gubernamental, juzgamos que tales excepciones a intervenir en casos presuntamente académicos habrán de sopesarse con mayor rigor.

b.

A pesar de lo explicado, operan en este caso ciertos hechos procesales acontecidos mientras estaba pendiente por resolverse el *recurso de revisión judicial* ante nuestra consideración que, a fin de cuentas, sí tornaron en académica la controversia que nos tocaba dirimir. Elaboramos.

El *recurso de revisión judicial* presentado por Rock Solid se dio contra la adjudicación de la subasta identificada bajo la *Resolución 39* del Municipio. Tal *Resolución* constituyó el *acuerdo final* o *adjudicación* al que refiere el Artículo 1.050 del Código Municipal, *supra,* que resultaba revisable por este

---

[2] Luego de esta Opinión el Tribunal Supremo se ha mostrado *tímido* al diseñar un remedio adecuado, suficiente en derecho, cuando se concluye que la cancelación de una subasta fue irrazonable o arbitraria, hecha con el propósito de evadir la revisión judicial, si se parte del interés público envuelto. Es decir, en dicha Opinión se le reconoció una causa de acción por daños y perjuicios al licitador afectado por la cancelación arbitraria de la subasta. Sin embargo, tal remedio resulta insatisfactorio, cuando se considera que el daño a ser indemnizado **no** se debe circunscribir al del interés privado, el del licitador perdidoso, **pues debería más bien servir para frenar el daño directo que provoca al interés público**. En este sentido, **reducir el remedio judicial a que el licitador perdidoso tenga una acción en daños contra la agencia o municipio, priva por completo a la sociedad de un vehículo para resarcirse del grave daño que le representa los procesos y adjudicaciones viciados de las subastas públicas. En definitiva, para lograr disuadir la conducta errada en los procesos de subasta, no bastaría con declarar la cancelación de esta cuando proceda, sino que se requeriría su adjudicación al verdadero mejor postor, sin que se conceda la oportunidad a la agencia o municipio de seguir realizando otros procesos de subastas, hasta permitir que terminen eligiendo al licitador que se quiere favorecer.**

Tribunal de Apelaciones, de presentarse recurso de revisión judicial dentro del término jurisdiccional dispuesto en ese mismo artículo, como aquí oportunamente lo hizo Rock Solid.

Sin embargo, una vez presentado dicho recurso ante nuestra consideración, el Municipio emitió otro *acuerdo final* o *adjudicación*, a través de la *Resolución 47*, mediante el cual canceló la adjudicación de la subasta bajo *Resolución 39*.

Sobre lo último, cabe señalar que el Municipio **no** estaba impedido de actuar sobre la *Resolución 39*, mientras se encontraba pendiente ante nosotros el *recurso de revisión judicial* instado por Rock Solid, por cuanto *no* se nos solicitó la paralización de los procesos que allí se conducían, ni emitimos orden a tales efectos. Es decir, el Municipio estaba habilitado para cancelar la adjudicación de la referida subasta, a través de la *Resolución 47*, según lo hizo.

A pesar de que la adjudicación final efectuada por el Municipio a través de la *Resolución 47* podía ser objeto de revisión judicial, por virtud del Artículo 1.050 citado, Rock Solid, ni ninguno de los licitadores a quienes le podía afectar tal determinación, incoó un recurso de revisión judicial para impugnarla, por lo que, transcurrido el término jurisdiccional para ello, advino final y firme.

Según es conocido, este Tribunal de Apelaciones no tiene autoridad en ley para revisar la adjudicación final sobre una subasta, sin que se hubiese interpuesto por una parte afectada un recurso de revisión judicial, dentro del término jurisdiccional correspondiente. En consecuencia, la cancelación de la subasta cuya impugnación pretendía Rock Solid advino final y firme, no estando este Tribunal de Apelaciones en posición de revisarla de manera colateral a través del *recurso de revisión judicial* bajo nuestra consideración, alusivo a la *Resolución 39*.

Lo anterior en modo alguno supone o puede interpretarse como una expresión de este Tribunal sobre la razonabilidad de la cancelación de la

subasta que interesó impugnar Rock Solid. Precisamente, no podemos pronunciarnos sobre si la cancelación de la subasta llevada a cabo mediante la *Resolución 47* cumplió con los elementos de razonabilidad explicados en *RBR Const., S.E. v. A.C.*, supra, porque Rock Solid no nos puso en posición de poder inquirir sobre tales aspectos al pretender impugnarla a través del mismo recurso de revisión judicial que refería a la *Resolución 39*.

En definitiva, tiene razón el Municipio al solicitar la desestimación del recurso de revisión judicial presentado por Rock Solid, pues durante su consideración acontecieron *cambios fácticos o procesales que convirtieron la controversia en una ficticia, de modo tal que el fallo que emita el tribunal no tendría efectos prácticos por tratarse de un asunto inexistente. Lozada Tirado et al. v. Testigos Jehová,* supra. El *cambio* al que hacemos referencia, que tuvo como resultado la academicidad, no es propiamente que el Municipio hubiese emitido una *Resolución* cancelando la subasta, (según ya explicado), sino que dicha adjudicación final adviniera final y firme.

## IV. Parte dispositiva

Por los fundamentos que anteceden, la controversia ante nosotros no es justiciable, pues se tornó académica, procede desestimar el *recurso de revisión judicial* presentado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. La juez Aldebol Mora concurre con el resultado, sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones