ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MARIBEL RIVERA RIVERA<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES Y/O CONSEJO DE TITULARES DEL CONDOMINIO PAVILION COURT REPRESENTADO POR SU PRESIDENTE RUBÉN J. LUCENA QUILÉS<br><br>Recurrido | KLRA202400545 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. C-SAN-2024-0018385<br><br>Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de febrero de 2025.

I.

En abril de 2023, la Sra. Maribel Rivera Rivera recibió una carta de cobro suscrita por el Presidente y la Tesorera del Condominio Pavilion Court, fechada 16 de marzo de 2023. En dicha misiva, la cual se acompañó con un estado de cuenta, se le reclamó el pago de $1,212.71 por concepto de cuotas de mantenimiento -$902.86-, y de seguro -$309.85-, del apartamento número 22-E, del cual es la titular. El 3 de mayo de 2023, la señora Rivera Rivera, por derecho propio, impugnó la deuda en el Departamento de Asuntos del Consumidor (DACo), mediante *Querella* Núm. SAN-2023-0015362. Reclamó, además, la falta de atención a reparaciones y conservación de elementos comunes en su apartamento.

El 16 de febrero de 2024, DACo le notificó *Resolución* desestimando la *Querella*. Se basó en que carecía de jurisdicción contra el Condominio y la Junta de Directores, por la querellada carecer de personalidad jurídica. Consignó, que toda reclamación

Número Identificador

SEN2025_____

debía dirigirse contra el Consejo de Titulares, una entidad jurídica conforme a Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada.[1]

El 20 de marzo de 2024, la señora Rivera Rivera, esta vez a través de abogado, incoó nuevamente una *Querella* -Núm. SAN-2024-0018385-, contra el Consejo de Titulares del Condominio Pavilion Court. En ella, reiteró que no procedía la deuda alegada y que el Condominio no había realizado reparaciones en los elementos comunes del apartamento a pesar de ella darle seguimiento.

El 22 de abril de 2024, DACo emitió *Orden* con citación a vista administrativa a celebrarse el 30 de mayo de 2024. El 28 de abril de 2024, el Condominio contestó la *Querella* y presentó *Moción de Desestimación.* El 29 de abril de 2024, DACo ordenó a la señora Rivera Rivera fijar posición respecto a la *Moción de Desestimación* presentada por el Condominio. El 17 de mayo de 2024, la señora Rivera Rivera presentó *Moción en Cumplimiento de Orden, Oposición a Desestimación de Querella.*

En la vista administrativa celebrada el 30 de mayo de 2024, luego de las partes dialogar fuera del récord, solicitaron término para auscultar resolver las controversias. Dado a lo anterior, el Juez Administrativo pautó la continuación de la vista para el 19 de junio de 2024.

Así las cosas, el 3 de septiembre de 2024, el DACo emitió *Resolución* desestimando otra vez la *Querella,* en esta ocasión, por falta de jurisdicción. En desacuerdo, el 3 de octubre de 2024, recurrió ante nos mediante *Recurso de Revisión Administrativa.* Plantea:

> Erró el Departamento de Asuntos del Consumidor al desestimar la querella por falta de jurisdicción al aplicar el término de treinta (30) días en vez del término de dos (2) años que dispone el Art. 65 de la Ley de Condominios

---

[1] 31 LPRA § 1921 *et seq.*

para impugnar la acción de cobro de la Junta de Directores.

Erró el DACO al desestimar la querella sobre impugnación de alegada deuda porque la acción se había tornado académica.

Erró el Departamento de Asuntos del Consumidor al desestimar la querella sobre falta de reparaciones a los elementos comunes del condominio al concluir que la reclamación está prescrita.

El 8 de octubre de 2024 concedimos plazo de treinta (30) días a la Junta de Directores para que fijara su posición. El 4 de noviembre compareció según ordenado. Con el beneficio de la comparecencia de ambas partes, el Derecho y jurisprudencia aplicable procedemos a resolver.

II.

En primer plano, la señora Rivera Rivera plantea que, el DACo se equivocó al desestimar la *Querella* por falta de jurisdicción al aplicar el término de treinta (30) días en vez del término de dos (2) años que dispone el Art. 65 de la Ley de Condominios para impugnar la acción de cobro de la Junta de Directores. Veamos.

El Art. 65 de la Ley 129-2020,[2] permite a los titulares impugnar las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares: a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.[3] El término establecido para este tipo de acción, es de treinta (30) días contados a partir de la fecha en que se tomó el acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en

---

[2] 31 LPRA § 1923j.
[3] *Id.*

que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.[4]

Ahora bien, cuando la impugnación se hace sobre acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares contrarias a la Ley, la escritura matriz o del reglamento del condominio, el término es de dos (2) años.[5] En estos casos, el cómputo del término inicia a partir de la fecha en que se tomó la acción, omisión o acuerdo, si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia.[6]

Según el Tribunal Supremo, la aplicación de uno u otro término depende de dos factores. El primero es, contra quién se dirige la acción y, el segundo, el fundamento de la impugnación.[7] De impugnarse los acuerdos, acciones u omisiones de la Junta de Directores o el Consejo de Titulares alegándose que estos han violado la Ley de Condominios, el Reglamento de la comunidad o la escritura matriz, el término será de dos (2) años. En cambio, si lo que se impugna son los acuerdos y determinaciones del Consejo Titular porque a juicio del titular estas son gravemente perjudiciales para él, el término será de treinta (30) días.

III.

La señora Rivera Rivera impugnó ante DACo multas que se le impusieron por cuotas de mantenimiento atrasadas, pago de derrama y multas atrasadas. El Condominio Pavilion Court le notificó el cobro de estas el 19 de julio de 2022 y, posteriormente, el 16 de marzo de 2023. Se trató de una acción que viene obligada a realizar la Junta de Directores por disposición del Art. 59 de la Ley

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Consejo de Titulares* v. *Gómez Estremera,* 184 DPR 407 (2012).

129-2020.[8] Es decir, no estamos ante una acción que pudiera impugnarse bajo el fundamento de que es ilegal, viola la escritura matriz o el reglamento del condominio. Por eso, le aplica el término de treinta (30) días y no el de dos años, aplicable a estas últimas.

La señora Rivera Rivera fue notificada de las deudas atrasadas a través de dos cartas de cobro, fechadas 19 de julio de 2022 y 16 de marzo de 2023. El 20 de marzo de 2024 la señora Rivera Rivera impugnó ante DACo la imposición de dichas multas. Evidentemente, se excedió por mucho de los treinta (30) días que tenía para ello. Tal y como intimó el DACo, su *Querella* estaba prescrita. No erró al desestimar la misma.

IV.

En su segundo señalamiento de error, la señora Rivera Rivera indica que el DACo no podía desestimar la *Querella* sobre impugnación de alegada deuda por académica. Tampoco tiene razón.

A.

Como sabemos, la doctrina de academicidad se fundamenta en el principio constitucional de que los tribunales existen para resolver casos y controversias genuinas entre partes adversas que poseen un interés real en obtener un remedio que afecta sus relaciones jurídicas y no para emitir opiniones consultivas.[9] Dicha doctrina pretende: (1) evitar el uso innecesario de los recursos judiciales y hacer pronunciamientos autoritativos que resulten innecesarios; (2) que haya la adversidad suficiente para que las controversias se presenten y se definan de manera competente y

---

[8] 31 LPRA § 1923d.

[9] *Super Asphalt Pavement, Corp.* v. *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico,* 206 DPR 803, 815 (2021); *U.P.R.* v. *Laborde Torres y otros,* 180 DPR 253, 280-281 (2010)*; E.L.A.* v. *Aguayo,* 80 DPR 552, 558-559 (1958).

vigorosa; y, (3) evitar precedentes innecesarios.[10] Así pues, la doctrina de academicidad es una de autolimitación.

Una controversia adolece de academicidad cuando no existe una controversia real o viva entre las partes, debido a modificaciones acaecidas en los hechos o en el derecho, cuyo efecto anula los efectos prácticos que tendría un dictamen judicial sobre la controversia.[11] Cuando ocurren cambios durante el trámite judicial que provocan que la controversia planteada pierda actualidad, la misma se torna académica.[12] Ello debido a que el remedio solicitado ante el tribunal no tendría ningún efecto sobre la controversia.[13]

Una vez se establece que un pleito es académico, los tribunales deben abstenerse de considerarlo en sus méritos.[14] De conformidad con ello, la Regla 83(B)(5) de nuestro Reglamento, autoriza desestimar un recurso cuando este se ha tornado en académico.[15] Sin embargo, existen instancias en que, por excepción, puede considerarse un caso aunque haya advenido académico. Son, cuando: 1) presenta una controversia recurrente y capaz de evadir revisión judicial; 2) la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia; 3) la controversia se ha tornado académica para el representante de una clase, pero no para otros miembros de la clase; y 4) persisten consecuencias colaterales que no se han tornado académicas.

B.

En este caso, la señora Rivera Rivera presentó tres cheques firmados por su representante legal, todos con fecha del 5 de abril de 2024. Uno, el cheque Núm. 1647, por la cantidad de $367.92

---

[10] *Torres Santiago* v. *Depto. Justicia,* 181 DPR 969, 982 (2011).
[11] *Asoc. Fotoperiodistas* v. *Rivera Schatz,* 180 DPR 920, 967 (2011).
[12] *Super Asphalt Pavement, Corp.,* 206 DPR en la pág. 816.
[13] *Noriega* v. *Hernández,* 135 DPR 406 (1995); *Asoc. de Periodistas* v. *González,* 127 DPR 704 (1991); *El Vocero* v. *Junta de Planificación,* 121 DPR 115 (1988).
[14] *Super Asphalt Pavement, Corp.,* 206 DPR en la pág. 816; *Misión Industrial* v. *Junta de Planificación,* 146 DPR 64 (1998); *Asoc. de Periodistas,* 127 DPR en la pág. 719.
[15] 4 LPRA Ap. XXII-B, R. 83.

para satisfacer el pago del seguro correspondiente al año 2020. El segundo cheque -Núm. 1648-, por la cantidad de $424.77 se giró para el pago del correspondiente al año 2024. El cheque Núm. 1650 por la cantidad de $300.00 lo emitió para el pago de cuotas de mantenimiento.

El Artículo 1117 del Código Civil de Puerto Rico de 2020 dispone que se "entiende efectuado el pago y extinguida la obligación cuando se ha ejecutado o entregado íntegramente la prestación debida al acreedor".[16] Sin duda, estos pagos extinguieron la deuda que la señora Rivera Rivera tenía por concepto de pagos de mantenimiento y derramas que el Condominio le exigió satisfacer a través de su carta de cobro. Aun cuando la *Querella* no estuviera prescrita, como lo estaba, las alegaciones por cobro de dinero relacionado a cuotas de mantenimiento y derramas atrasadas, resultó académica, ya que la deuda dejó de existir y con ello, la controversia justiciable. Por lo tanto, no se cometió el segundo error.

V.

Por último, la señora Rivera Rivera imputa error al DACo al desestimar la *Querella* que incluía reclamo de falta de reparaciones a los elementos comunes del condominio debido prescripción. Tampoco tiene razón.

El 22 de marzo de 2022, el Condominio celebró Asamblea Extraordinaria con el propósito de aprobar, entre otros asuntos, el Plan de Distribución de Fondos recibidos de la compañía aseguradora, por concepto de daños relacionados al paso del Huracán María. En dicha fecha se atendió el asunto y se aprobó el plan de distribución con pocas modificaciones, las cuales fueron recogidas en el acta y notificadas a los titulares en la asamblea.

---

[16] 31 LPRA § 9141.

No fue hasta el 20 de marzo de 2024 que la señora Rivera Rivera presentó su *Querella* ante el DACo, alegando incumplimiento en las reparaciones a su hogar, en desacuerdo con lo aprobado por el Consejo de Titulares en la Asamblea Extraordinaria. No alegó violaciones de ley, sino el descontento con el curso del Plan de Distribución aprobado por el Consejo de Titulares.

Como mencionamos previamente, este tipo de reclamo prescribe a los treinta (30) días. Habiéndose incoado la *Querella* más de un año después, procedía su desestimación por prescripción. No se equivocó DACo al así proceder.

VI.

Por los fundamentos antes expuestos, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones