ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ORLANDO HERNÁNDEZ SOTO<br>Lesionado-Recurrido<br><br>COMISIÓN INDUSTRIAL DE PUERTO RICO<br>Agencia Recurrida<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Asegurador-Recurrente | KLRA202400457 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Industrial de Puerto Rico<br><br>Caso CI Núm. 23-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-07<br><br>Caso C.F.S.E. 23-03-01609-0<br><br>Sobre: DISCREPANCIA |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece ante este Tribunal, el Administrador de la Corporación Fondo del Seguro del Estado (en adelante, parte recurrente o CFSE), quien presenta este recurso en el que solicita la revisión de la *Resolución* dictada por la Honorable Comisión Industrial de Puerto Rico, (en adelante, agencia recurrida o Comisión), del 28 de mayo de 2024 y notificada el 18 de julio de 2024.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, se *confirma* el recurso de epígrafe mediante los fundamentos que expondremos a continuación:

**-I-**

El señor Orlando Hernández Soto (en adelante, señor Hernández Soto o parte recurrida), laboraba como Agente Especial en el Departamento de Seguridad Pública. La parte recurrida alegó

que sufrió un accidente laboral el 18 de julio de 2022, por lo que el 20 de julio de 2022 radicó una reclamación ante la CFSE. Conforme al Informe Patronal radicado, la parte recurrida alegó que "estaba transportando cajas de evidencias, tropezó con desperfectos del piso (rotos) provocando la caída contra un muro de cemento".[1]

El 22 de julio de 2022, la parte recurrida fue examinado y evaluado por el personal médico de la CFSE. Se emitió Decisión del Administrador sobre Tratamiento Médico, notificada el 22 de julio de 2022. Se indicó que "el lesionado fue examinado por primera vez el día 22 de julio de 2022, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en: CT (mientras trabaja)".[2] Esta decisión no fue apelada por la parte recurrida, por lo que advino final y firme.

La parte recurrida continuó recibiendo evaluaciones y tratamiento rehabilitador ante el asegurador y el 13 de noviembre de 2023 fue nuevamente evaluado por los médicos de la CFSE. Mediante Decisión del Administrador sobre Tratamiento Médico, notificada el 15 de noviembre de 2023, se dispuso que: "La parte recurrida fue examinado el día 13 de noviembre de 2023, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en: descanso hasta el día 12 de diciembre de 2023 y se comenzará tratamiento médico en CT (mientras trabaja) el día 13 de diciembre de 2023".[3] Inconforme con esta decisión, la parte recurrida presentó apelación ante la Comisión.[4]

El 12 de diciembre de 2023, previo a que la parte recurrida comenzara tratamiento médico en CT, este fue evaluado nuevamente por los médicos de la CFSE. Mediante Decisión del Administrador sobre Tratamiento Médico, notificada el 14 de

---

[1] Apéndice I del Recurso de Revisión Judicial, pág. 1.
[2] Apéndice II del Recurso de Revisión Judicial, págs. 2-3.
[3] Apéndice III del Recurso de Revisión Judicial, págs. 4-5.
[4] Apéndice IV del Recurso de Revisión Judicial, pág.6.

diciembre de 2023, se resolvió que: "La parte recurrida fue examinado el día 12 de diciembre de 2023, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:  descanso hasta el 21 de diciembre de 2023 y se comenzará tratamiento médico en CT (mientras trabaja) el día 22 de diciembre de 2023".[5] Inconforme con esta decisión, la parte recurrida presentó apelación nuevamente ante la Comisión.[6]

El 22 de diciembre de 2023, fecha en que la parte recurrida debía comenzar tratamiento en CT (mientras trabajaba), este fue nuevamente evaluado por los médicos de la CFSE. Mediante Decisión del Administrador sobre Tratamiento Médico, notificada el 27 de diciembre de 2023, se determinó que: "La parte recurrida fue examinado el día 22 de diciembre de 2023, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:  descanso hasta el 10 de enero de 2024 y se comenzará tratamiento médico en CT (mientras trabaja) el día 11 de enero de 2024".[7] Nuevamente, inconforme con esta decisión, la parte recurrida presentó apelación ante la Comisión.[8]

La parte recurrida fue nuevamente evaluada el 11 de enero de 2024. Mediante Decisión del Administrador sobre Tratamiento Médico, notificada el 22 de enero de 2024, se dispuso  nuevamente que: "La parte recurrida fue examinado el día 11 de enero de 2024, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:  descanso hasta el 29 de enero de 2024 y se comenzará tratamiento médico en CT (mientras trabaja) el día 30 de enero de 2024".[9] Inconforme con esta decisión, la parte recurrida volvió a presentar apelación ante la Comisión.[10]

---

[5] Apéndice V del Recurso de Revisión Judicial, págs. 7-8.
[6] Apéndice VI del Recurso de Revisión Judicial, pág. 9.
[7] Apéndice VII del Recurso de Revisión Judicial, págs. 10-11.
[8] Apéndice VIII del Recurso de Revisión Judicial, pág. 12.
[9] Apéndice IX del Recurso de Revisión Judicial, págs. 13-14.
[10] Apéndice X del Recurso de Revisión Judicial, pág. 15.

La parte recurrida fue nuevamente evaluada el 30 de enero de 2024. Mediante Decisión del Administrador sobre Tratamiento Médico, notificada el 1 de febrero de 2024, se dispuso que: "La parte recurrida fue examinado el día 30 de enero de 2024, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:  descanso hasta el 19 de febrero de 2024 y se comenzará tratamiento médico en CT (mientras trabaja) el día 20 de febrero de 2024".[11] Inconforme con esta decisión, la parte recurrida presentó apelación ante la Comisión.[12]

El 20 de febrero de 2024, la parte recurrida fue nuevamente evaluado por el Asegurador y mediante Decisión del Administrador notificada el 22 de febrero de 2024, se dispuso que:  "La parte recurrida fue examinado el día 22 de febrero de 2024, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en: descanso hasta el 10 de marzo de 2024 y se comenzará tratamiento médico en CT (mientras trabaja) el día 11 de marzo de 2024".[13] Inconforme con esta decisión, nuevamente la parte recurrida presentó apelación ante la Comisión.[14]

**Conforme a las determinaciones que ha realizado en primera instancia la CFSE, mientras la parte recurrida estuvo bajo su jurisdicción, este estuvo recibiendo tratamiento en descanso de forma continua e ininterrumpida desde el 13 de noviembre de 2023 hasta el 10 de marzo de 2024**.

Acorde al Historial de Pagos por dietas transitorias, la parte recurrida estuvo continuamente recibiendo los pagos de dietas por el período que este estuvo en descanso. Este período incluyó el pago continuo de las cantidades correspondientes desde el 13 de noviembre de 2023 hasta el 11 de marzo de 2024.[15]

---

[11] Apéndice XI del Recurso de Revisión Judicial, págs. 16-17.
[12] Apéndice XII del Recurso de Revisión Judicial, pág. 18.
[13] Apéndice XIII del Recurso de Revisión Judicial, págs. 19-20.
[14] Apéndice XIV del Recurso de Revisión Judicial, pág. 21.
[15] Apéndice XV del Recurso de Revisión Judicial, págs. 22-23.

El 20 de marzo de 2024, se celebró una Vista Médica para dilucidar las múltiples apelaciones presentadas por la parte recurrida. Durante la misma, el médico asesor de la Comisión, Dr. Antonio Vivaldi Picó, recomendó revocar todas las Decisiones del Administrador sobre Tratamiento en CT (mientras trabaja), a tenor con el estudio del expediente. Por su parte, el médico asesor de la CFSE discrepó, la recomendación, ya que estas Decisiones del Administrador causaron una continuidad del tratamiento en descanso desde el 13 de noviembre de 2023, hasta el 11 de marzo de 2024. Por lo que, la parte recurrente admitió que no existía una controversia adjudicable desde la perspectiva médica.[16]

Empero, ante la discrepancia surgida, la Comisión emitió *Resolución de Vista Médica* en la que ordenó señalar una *Vista Pública* para dilucidar la discrepancia surgida en *Vista Médica.* La *Vista Pública* sobre discrepancia se celebró el 22 de mayo de 2024.

Durante la misma las partes argumentaron sus posturas. Por parte de la CFSE, se argumentó que al momento de la Comisión efectuar la revisión judicial (administrativa) de las Decisiones del Administrador en cuestión, no existía una controversia adjudicable que causara un efecto práctico sobre las mismas. **Esto toda vez que, la CFSE,** *motu proprio* **había emitido una nueva decisión en la cual extendía el período en descanso de la parte recurrida, causando una continuidad de tratamiento**. Por lo que, ante esta realidad fáctica, la controversia se convertía en académica y procedía que la Comisión se abstuviera de atender la misma en un ejercicio de autoevaluación de su jurisdicción.

El 28 de mayo de 2024, surge del Informe ante la Comisión:[17]

> La Dra. Lyzbéth Reyes Martínez manifestó que en el día de hoy tuvieron la oportunidad de evaluar los C.T. correspondientes y estaríamos parcialmente de acuerdo en cuanto a Ia discrepancia. Explicamos el C.T. del 13

---

[16] Apéndice XVI del Recurso de Revisión Judicial, págs. 24-25.
[17] Apéndice XVII del Recurso de Revisión Judicial, págs. 28-35.

de diciembre de 2023 fue revaluado el 12 de diciembre de 2023 por la Corporación del Fondo del Seguro del Estado y extendió este descanso hasta el 22 de diciembre de 2023. Apelaron el C.T. del 22 diciembre de 2023 y el mismo fue revaluado el mismo 22 de diciembre de 2023 y extendido este descanso hasta el 111 de enero de 2024. Asi mismo apelaron el C T del 11 de enero de 2024 y ese C T fue revaluado el mismo 11 de enero de 2024 y se extendió- hasta el 30 de enero de 2024. Posteriormente apelaron ese C.T. del 30 de enero de 2024 y el mismo 30 de enero de 2024 fue revaluado, por el Fondo y extendido hasta el 20 de febrero del 2024 Así mismo apelaron el C T del 20 de febrero de 2024 y el mismo 20 de febrero de 2024 el lesionado fue revaluado por la Corporación del Fondo del Seguro del Estado y extendió este descanso hasta el 11 de marzo de 2024 Entendernos que en estos cinco C.T. que he mencionado no hubo período que estuviera descubierto el descanso en el lesionado Por lo que no hay período alguno para revocar.

En efecto, determinó que durante el término que el empleado estuvo en descanso desde el 13 de noviembre de 2023, hasta el 11 de marzo de 2024, no existe controversia. No obstante, señala:

Por otra parte[,] el C.T. del 11 de marzo de 2024 hoy tenemos la oportunidad de revaluarlo, vemos que no fue revaluado por el Fondo, que s[í] estuvo en tratamiento rehabilitador [sic] el lesionado que posteriormente el Fondo lo pone en descanso para el 7 de mayo de 2024 por lo cual estamos de acuerdo en que ese C.T. del 11 de marzo de 2024 sea revocado para que el lesionado pueda estar en descanso hasta esas fechas en las cuales el propio Fondo lo pone en descanso hasta el 20 de junio de 2024.[18]

.        .        .        .        .        .        .        .

No ha habido una interrupción del periodo mediante el cual el lesionado ha permanecido en la jurisdicción del Asegurador, desde su periodo inicial ha permanecido en la jurisdicción del Asegurador, no hay nada en contrario que establezca la ley y el reglamento con relación a la interrupción de la dieta al contrario la ley y el reglamento son claras en cuanto a la continuidad de la incapacidad transitoria, **no hay nada que contenga la ley en cuanto a lo que le llaman aquí erróneamente C.T. seriado, eso es un invento de la practica aquí en este foro que no lo recoge la ley, no lo recoge el reglamento, <u>al contrario le obliga a la parte lesionada tener que ir sin fundamento alguno establecido en ley cada cierto tiempo al Asegurador para que le renueven su descanso</u>**. Esa decisión de descanso da un C.T. futuro sin evaluación tan siquiera de un médico. Con relación al argumento que hace el compañero    del aspecto de academicidad este

---

[18]*Íd.*, pág. 28-29. Nota: El documento contiene un ponche que impide la adecuada compresión del párrafo antes citado.

representante legal tanto en este foro, en foro apelativo ha sido enfático en que aquí lo que ocurre es que se da la excepción a la doctrina de la academicidad recogido en los casos de *Moreno vs. Presidente de la UPR, Lozada Tirado vs. Testigos de Gehová*,[sic], múltiples casos donde hay cuatro excepciones y se tienen que dar y la numero uno es que si la controversia es una recurrente y con probabilidad de recurrencia. **A todas luces aquí hay una recurrencia y aquí se atendieron en esa vista medica seis (6) C.T. El perito del Asegurador acaba de mencionar que hay uno nuevo que se le dio al lesionado el 7 de mayo de 2024 y dura hasta el 20 de mayo de 2024 que nosotros oportunamente lo tenemos apelado el 20 de mayo de 2024.**[19] (Énfasis suplido).

Segundo criterio que la identidad de las partes involucradas en el posible pleito futuro es la misma parte y es lo mismo y es en pleito futuro. **Porque cada C.T. es prematuro el lesionado tiene que hacer una apelación. [...] por lo tanto no tienen vicios de permanencia tampoco. Cuando puedan persistir consecuencias colaterales que no se han tornado académicos.**[20] (Énfasis suplido).

En este caso y en otros casos ya nos hemos dado cuenta de que los lesionados sino hacen la apelación, por ejemplo, y me voy a remitir a la última decisión que se atendió en esa vista, se le dio el 11 de marzo de 202[4] un periodo de C.T. que comenzaba en ese periodo. **Si el lesionado no hubiese apelado la decisión al día de hoy el lesionado no tenía derecho a que como establecen ambos médicos se le revoque ese periodo de dietas y al Asegurador se le ordene pagarlo**. Por que,[sic] porque se apeló oportunamente precisamente por esta representación legal es que el lesionado va a tener derecho a que se le paguen esas dietas que el Asegurador no le pagó desde el 11 de marzo hasta que comenzó en la próxima decisión el 7 de mayo de 2024 y comenzó a recibir dietas nuevamente.[21] (Énfasis suplido).

El 18 de julio de 2024, la Comisión notificó *Resolución* de Vista Pública, en la cual acogió todas las recomendaciones emitidas por el Oficial Examinador que presidió la Vista Médica.[22] Mediante esta, determinó que no procedía la defensa de Academicidad planteada por el CFSE, que no procedía la discrepancia presentada en Vista Médica por el médico del Asegurador y ordenó revocar las decisiones en cuestión. De igual forma, se desprende de la *Resolución* emitida,

---

[19] *Íd.*, pág. 30.
[20] 20 *Íd.*, pág. 30.
[21] *Íd.*, pág. 30.
[22] Apéndice XVII del Recurso de Revisión Judicial, págs. 26-27.

las debidas advertencias y los respectivos términos para que una parte adversamente afectada pueda solicitar la reconsideración de la resolución según las disposiciones de la Ley Núm. 45-1935, 11 LPRA sec.1, la Ley Núm. 201-2003, 4 LPRA sec. 2, la Ley Núm. 38-2017, 32 LPRA sec. 9601 y el Reglamento del Tribunal de Apelaciones (Resolución ER-2004-10).[23] La CFSE no presentó ninguna *Moción de Reconsideración* ante la Comisión de la *Resolución* recurrida.

Inconforme con dicho dictamen, la CFSE presentó el Recurso de Revisión que nos ocupa en el cual le imputó los siguientes señalamientos de error:

> Erró la Honorable Comisión Industrial al determinar revocar las decisiones del administrador sobre tratamiento en descanso con fechas 13 de noviembre de 2023, 12 de diciembre de 2023, 22 de diciembre de 2023, 11 de enero de 2024, 30 de enero de 2024 y 20 de febrero de 2024.
>
> Erró la Honorable Comisión Industrial al determinar que la controversia no aplicaba la figura de academicidad en la disposición de las apelaciones ente su consideración.
>
> Erró la Honorable Comisión Industrial al determinar que las decisiones de la CFSE presentan una controversia recurrente, configurándose así una excepción al principio de academicidad.

Con la comparecencia de las partes, examinado el recurso en su totalidad, procedemos a exponer el derecho aplicable en aras de resolver.

*-II-*

*-A-*

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870,

---

[23] *Íd.*, pág. 27.

893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. JP y AAA*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo de Puerto Rico se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.,* a la pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan

en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Ley Núm. 38-2017, 3 LPRA sec. 9675.

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P., supra,* pág. 131. Además, dicho Foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999); *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa quien tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

### -B-

La academicidad es una de las manifestaciones del concepto de justiciabilidad que enmarca los límites de la función judicial. *CEE v. Depto. de Estado,* 134 DPR 927, 934 (1993). Un caso es académico

cuando pierde su carácter adversativo, bien por cambios fácticos o judiciales, acaecidos durante el trámite judicial y ello torna su solución en ficticia, convirtiéndose en una opinión consultiva. *Asoc. Foto Periodistas v. Rivera Schatz*, 180 DPR 920, 932-933 (2011); *Angueira v. JLBP*, 150 DPR 10, 19 (2000). Es decir, el pleito es académico cuando la sentencia que sobre el mismo se dictare, por alguna razón, no podría tener efectos prácticos. *Cruz v. Administración*, 164 DPR 341, 349 (2005); *ELA v. Aguayo*, 80 DPR 552, 584 (1958).

Al examinar la academicidad de un caso, se debe evaluar los eventos anteriores, próximos y futuros, a fines de determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo. *San Antonio Maritime v. P.R. Cement Co.*, 153 DPR 374, 387 (2001). Una vez se determina que un caso es académico los tribunales tienen el deber de abstenerse y no puede entrar a considerar sus méritos. *El Vocero v. Junta de Planificación*, 121 DPR 115, 124-125 (1988).

Existen varias excepciones a la doctrina de academicidad, a saber: (1) casos en los que aun cuando la decisión del tribunal no afecta a las partes involucradas presentan una cuestión recurrente; **(2) casos en donde la situación de hechos ha sido modificada voluntariamente por el demandado pero sin visos de permanencia**; (3) pleitos de clase en los cuales la controversia se torna académica para un miembro de la clase más no para el representante de la misma; y **(4) casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales**. *RBR Construction, SE v. AC*, 149 DPR 836, 846 (1999); *Asoc. de Periodistas v. González*, 127 DPR 704, 719-720 (1991).

-*C*-

La Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 1, según enmendada, también conocida como la Ley del Sistema de

Compensaciones Por Accidente de trabajo, (en adelante, Ley Núm.45-1935), establece un sistema de seguro compulsorio para todos los patrones con el fin de proveer diversas protecciones y beneficios para los obreros que sufren accidentes en su empleo. *Carrasquillo Pérez v. Asociación y/o Consejo de Titulares del Condominio del Parque 352*, 2024 TSPR 101, 214 DPR ___ (2024); *Guzmán Cotto v. ELA.*, 156 DPR 693, 727-728 (2002). Esto pues, el derecho del empleado a recibir una compensación de la CFSE surge independientemente de si medió o no negligencia suya o del patrono. *Íd.* pág. 729. Dentro del Articulo 3- Derechos de Obreros y Empleados inciso (b) lo que es la Incapacidad transitoria, veamos:

> **(b) Incapacidad Transitoria**. — Si la incapacidad fuere de carácter temporal o transitoria, a una compensación equivalente a sesenta y seis y dos tercios (662/3) por ciento del jornal que percibía el día del accidente, o que hubiere de percibir a no ser por la ocurrencia del accidente, durante el período de incapacidad para el trabajo, pagadera por semanas vencidas. El período de tal pago no excederá en ningún caso de trescientas doce (312) semanas; Disponiéndose, que en ningún caso se pagará más de cien (100) dólares ni menos de treinta 30) dólares semanales. **El obrero o empleado tendrá derecho a compensación desde el día que se presente al médico para recibir tratamiento. Disponiéndose, que en aquellos casos en que un lesionado a juicio del Administrador requiera como parte del tratamiento ser referido a adiestramiento o readiestramiento vocacional, el lesionado recibirá la compensación antes mencionada**, pero en ningún caso se pagarán más de veintiséis (26) semanas. Ningún empleado o funcionario público podrá recibir durante el período de incapacidad para el trabajo, con excepción del período que disfrute de la licencia regular por vacaciones o por enfermedad, cantidad alguna por concepto de compensaciones semanales que, sumadas al sueldo que reciba de la agencia del gobierno para la que trabaje, exceda del sueldo regular de su plaza. 11 LPRA Sec. 3. (Énfasis suplido).

También define en su Artículo 9. — Apelación contra la Decisión del Administrador:

> **Si el obrero o empleado, o sus beneficiarios, no estuviesen conformes con la decisión dictada por el Administrador de la Corporación del Fondo del Seguro del Estado en relación con su caso, podrán apelar ante la Comisión Industrial dentro de un término de treinta (30) días después de haber sido**

**notificados con copia de la decisión del Administrador, y el caso se referirá a un oficial examinador.** En los casos de patronos no asegurados, tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez el Administrador haya declarado al patrono como uno no asegurado, teniendo dicho patrono un término de treinta (30) días para apelar la decisión del Administrador.

**Una vez presentada una apelación por un obrero lesionado, en que haya una controversia de carácter médico, el apelante será examinado en una vista médica para determinar si el apelante necesita tratamiento médico adicional, ser evaluado por un especialista o se requiere revisar la determinación sobre incapacidad. Dicha vista será efectuada por médicos de la Corporación del Fondo del Seguro del Estado y de la Comisión Industrial conjuntamente, y por el médico que el obrero tuviese a bien traer, cuyos honorarios y gastos de viajes serán compensados por la Comisión Industrial en la forma que se establezca por reglamento, estará a cargo y bajo el control del médico representante de la Comisión. El apelante podrá estar asistido por abogado.**

**Los médicos a cargo de la vista médica prepararán un informe a la Comisión sobre la evaluación médica y las medidas tomadas relacionadas con la condición, tratamiento médico del apelante y determinaciones sobre incapacidad, si alguna. La Comisión emitirá la resolución de rigor y le notificará al apelante. De estar el apelante inconforme con la resolución de la Comisión, éste podrá solicitar la celebración de una vista pública dentro del término de treinta (30) días.** Cuando el obrero apelante designare a su propio médico para que le asista en la apelación, los honorarios de dicho médico y sus gastos de viaje serán compensados por la Comisión en la forma que se establezca por reglamento.

El Presidente designará un cuerpo de oficiales examinadores cuya función será colaborar en la función adjudicativa de la Comisión al investigar y presidir las vistas públicas que se celebren en la Comisión que sean de naturaleza cuasi judicial. Estos ocuparán posiciones de carrera dentro de la Comisión y tendrán autoridad para:
(1) tomar juramento y declaraciones;
(2) expedir citaciones, requerir la presentación de informes, libros, papeles y documentos que consideren necesarios para el ejercicio de sus funciones;
(3) recibir evidencia pertinente y dictaminar sobre ella;
(4) tomar o hacer tomar deposiciones;
**(5) celebrar vistas públicas y regular el curso de las mismas;**
**(6) celebrar y presidir conferencias preliminares para aclaración y simplificación de los asuntos en controversia;**
**(7) disponer de instancias procesales o asuntos similares;**

KLRA202400457                                                                                      15

**(8) recomendar decisiones a la Comisión Industrial; y**
**(9) ejecutar funciones de autoridad delegada de adjudicación, la labor de estos oficiales examinadores será válida con la firma de un solo comisionado**.

La Comisión dispondrá por reglamento los procedimientos que gobernarán la celebración de vistas médicas y vistas públicas, conforme con lo dispuesto en la Ley Núm. 170 de 12 de agosto de 1988, según enmendada [Nota: Derogada y sustituida por la Ley 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"]. Las vistas públicas que se celebren serán públicas, excepto en los casos en los cuales el apelante haya demostrado la existencia de daño irreparable, según dispuesto por el reglamento para la celebración de las mismas. Se levantará un acta de toda vista médica y vista pública que se celebre. **Las resoluciones emitidas por los oficiales examinadores o los Comisionados contendrán un resumen de toda la evidencia presentada, una exposición de la evidencia aquilatada, determinaciones de hechos y conclusiones de derecho que ilustren el derecho y la ley aplicable**. 11 LPRA sec. 11

De la misma manera, el Reglamento del Fondo del Seguro del Estado, intitulado Reglamento sobre Derechos de Obreros y Empleados, Reglamento Núm. 3966 de 9 de agosto de 1989, (en adelante el Reglamento), mantiene una serie de definiciones cónsonas con la Ley. En lo pertinente en la sección 2: Base Legal, se define en el inciso K- **INCAPACIDAD TRANSITORIA**: incapacidad temporera para trabajar luego de que el obrero o empleado haya sufrido un accidente del trabajo o una enfermedad ocupacional que le impida, por un período determinado de tiempo trabajar, ya sea por la lesión o condición que presenta o por el tratamiento médico que recibe. De igual forma define: **C- COMISIÓN INDUSTRIAL**-significa el organismo con funciones cuasi-judiciales con facultad para revisar las decisiones emitidas por el Administrador del Fondo del Seguro del Estado.

Por último, en la Sección 14 del antedicho Reglamento: **COMPENSANCIÓN POR INCAPACIDAD TRANSITORIA (DIETAS)**: destacamos lo siguiente:

Todo obrero o empleado que sufra un accidente del trabajo o una enfermedad ocupacional compensable y que un médico del Administrador determine éste está transitoriamente incapacitado para trabajar, tendrá derecho al pago de compensación por incapacidad transitoria (dietas).

La incapacidad transitoria para trabajar, debe ser el resultado de:

1- Que la lesión o condición le incapacite para trabajar y/o
2- El tratamiento que reciba le impida trabajar

Existen tres (3) circunstancias en que el Administrador deberá proveer tratamiento médico y pagar compensación por dietas, estos son:

1- Periodo de recuperación inicial, que es el se inicia una vez el empleado se presenta para tratamiento luego de ocurrir un accidente del trabajo que se queja por primera vez de alguna condición relacionada con su trabajo y termina al ser dado de alta curado y sin incapacidad o porque se reconoce la existencia de una incapacidad permanente que no ha de mejorar con mas tratamiento. […]

Finalmente, cualquier controversia surgida al palio de la Ley Núm. 45-1935, será dilucidada ante la Comisión Industrial de Puerto Rico, por disposición legislativa. 11 LLPRA sec. 3. La Comisión Industrial opera al amparo de las Reglas de Procedimiento de la Comisión Industrial de Puerto Rico, Reglamento Núm. 9464 aprobado el 26 de mayo de 2023. Bajo la Regla 9 del precitado Reglamento se establece lo relacionado a la **Apelación sobre Incapacidad Transitoria** (dietas):

Todo escrito de apelación sobre una reclamación de compensación por incapacidad transitoria (dietas) cumplirá con los requisitos establecidos en la Regla 6. Además, la parte apelante cumplirá con lo siguiente:

a. Indicará la fecha exacta en que la parte apelante comenzó a recibir tratamiento y término el período de incapacidad transitoria solicitado.
b. Inducirá el tratamiento médico recibido durante el período redamado/señalando el nombre y dirección del médico o institución médica que brindó el tratamiento, número de récord y las condiciones por las que requirió tratamiento.
c. Informar si el apelante realizó labores remuneradas durante el período sobre el cual se

reclama el pago de compensación por incapacidad transitoria, si alguna.

Una vez presentada la apelación, se suspenderán todos los procedimientos ante el Administrador con respecto a la reclamación o parte de esta de la cual se apela, incapacidad transitoria (dietas), o las cuestiones comprendidas en ella, salvo orden en contrario de un Comisionado o un Oficial Examinador según sea el caso por iniciativa propia o a solicitud de parte.

De igual forma, la Regla 16 regula lo pertinente sobre las Vistas Médicas. En las próximas sub secciones 16.1, Discrepancia, 16.2 No discrepancia en cuanto a tratamiento médico, la Comisión Industrial evaluará y determinará caso a caso el curso a seguir según las disposiciones establecidas en la Regla 4 de este Reglamento, y en lo pertinente a la Ley Núm. 45-1935, Artículo 9, 11 LPRA sec. 11.

Finalmente, en la **Regla 19.5- Informe y Resolución:**

Una vez el caso quede sometido para adjudicación, la Comisión redactará una resolución en la cual incluirá una relación sucinta de lo acontecido en la vista pública, determinaciones de hechos y conclusiones de derecho que sustenten la decisión recomendada.

En aquellos casos en que el Ponente sea un Oficial Examinador someterá un informe con determinaciones de hechos y conclusiones de derecho a la atención de los Comisionados, el cual se hará formar parte de la resolución final. [...]

*-III-*

El CFSE acude ante este foro manifestando tres (3) señalamientos de error que discutiremos a continuación. En el primero aduce que la Comisión erró en revocar las decisiones del administrador sobre tratamiento en descanso con fechas de 13 de noviembre de 2023, 12 de diciembre de 2023, 22 de diciembre de 2023, 11 de enero de 2024, 30 de enero de 2024 y 20 de febrero de 2024.

Por otro lado, en los errores dos (2) y tres (3) arguye que la Comisión no podía adjudicar la controversia por ser de aplicación la

figura de la academicidad, y que en este caso no existía una excepción a dicha doctrina. *No le asiste la razón.*

El CFSE sostiene que incidió la Comisión cuando acogió las determinaciones de hechos realizadas por el Oficial Examinador. El foro recurrido tomó en consideración las seis (6) ocasiones en donde el señor Hernández Soto había tenido que estar realizando apelaciones para poder obtener el tratamiento médico mientras trabajaba (CT). De igual manera, la Comisión utilizó el caso de *José M. Toyens Arzuaga v. CFSE,* CI:13- 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, como fundamento para llegar a su determinación sobre la revocación de las fechas señaladas. El CFSE no rebatió la presunción de corrección que permea la *Resolución* recurrida.

No se desprende que la Comisión haya actuado de forma arbitraria, ilegal, caprichosa o que haya abusado de su discreción. Tampoco se desprende que el remedio haya sido inapropiado, las determinaciones de hecho están sustentadas por un Informe completo y sus conclusiones de derecho fueron correctas. Es por ello, que, dentro de este contexto, no encontramos razón alguna para intervenir en su determinación. *No se cometió el error señalado.*

Por estar intrínsecamente atados, discutiremos de manera conjunta los dos errores relacionados a la academicidad. Según el trámite procesal reseñado, la parte recurrida impugnó oportunamente ante la CFSE los múltiples dictámenes emitidos. Si no objetaba las determinaciones sobre el tratamiento, perdía el derecho a recibir el tratamiento y el pago de las dietas. Indudablemente, desde que el señor Hernández Soto comenzó a recibir el tratamiento al que tiene derecho como obrero lesionado, el CFSE realizó un procedimiento, que como bien se desprende del Informe del Oficial Examinador:

> [...] no hay nada en contrario que establezca la ley y el reglamento con relación a la interrupción de la dieta al contrario la ley y el reglamento son claras en cuanto a

la continuidad de la incapacidad transitoria, **no hay nada que contenga la ley en cuanto a lo que le llaman aquí erróneamente C.T. seriado, eso es un invento de la practica aquí en este foro que no lo recoge la ley, <u>no lo recoge el reglamento, al contrario le obliga a la parte lesionada tener que ir sin fundamento alguno establecido en ley cada cierto tiempo al Asegurador para que le renueven su descanso</u>**. [...][24]  (Énfasis suplido).

Ciertamente, y tal como se desprende del lenguaje del Informe en su totalidad, el modo de operar de parte del CFSE no permite que se configure la doctrina de academicidad, pues la situación se continúa modificando voluntariamente por el CFSE cada vez que la parte recurrida tiene que apelar una decisión.  Del mismo modo, la Comisión determinó que sobre el procedimiento sobre las vistas que desembocaron en una Vista Médica, no prevaleció el médico asesor del CFSE por lo que la discrepancia no procedía. *No se cometieron los errores señalados.*

### *-IV-*

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se *confirma* el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[24] Apéndice XVII del Recurso de Revisión Judicial, pág. 29.