Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARIBBEAN HOSPITAL CORPORATION, INC. Peticionario V. CARIBBEAN ANESTHESIA MANATÍ, INC. T/C/P CARIBBEAN ANESTHESIA SERVICES, INC. T/C/P DORADO HEALTH INC.; DR. ALVIN RAMÍREZ; GINORIS DE JESÚS GOLDEROS; VANESSA DE JESÚS GOLDEROS, MARÍA DE JESÚS PAGÁN; JOSÉ RAMOS CUBANO Y SU ESPOSA FULANA DE TAL Y SU SOCIEDAD DE GANANCIALES; MANUEL CRUZ SOTO SU ESPOSA MENGANA DE TAL Y SU SOCIEDAD DE GANANCIALES; JOSÉ L. QUIRÓS; Y LAS COMPAÑÍAS ASEGURADORAS A, B, C Recurridos | TA2025RE00006 | *Petición de Mandamus* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Caso Núm.: K CD1999-0226 Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, la Juez Lebrón Nieves y el Jueza Álvarez Esnard[1]

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2025.

El 15 de septiembre de 2025, compareció ante este Tribunal de Apelaciones, Caribbean Hospital Corporation, Inc. (en adelante, parte peticionaria o CHC), por medio de *Petición de Mandamus.* Mediante la aludida petición nos solicita que, ordenemos al Tribunal de Primera Instancia, Sala Superior de San Juan a resolver a la

---

[1] De conformidad con la Orden Administrativa OATA-2025-181, emitida el 17 de septiembre de 2025, se designa a la Jueza Álvarez Esnard en sustitución del Juez Rodríguez Flores debido a su inhibición en el recurso de epígrafe.

brevedad posible todos los asuntos sometidos ante su consideración desde el 13 de marzo de 2023.

Por los fundamentos que adelante se expresan, se desestima el recurso de epígrafe por falta de jurisdicción al tornarse académico.

**I**

De entrada, nos compete destacar que, las partes de este caso han comparecido en múltiples ocasiones ante esta Curia dentro del mismo pleito procesal. Conforme a ello, adoptamos por referencia el trámite procesal plasmado en la *Sentencia* emitida el 12 de julio de 2022, en el caso con designación alfanumérica KLCE202200335. Por tanto, nos circunscribimos a reseñar las incidencias procesales ocurridas con posterioridad.

Según reseñado en los casos anteriores, el 25 de enero de 1999, CHC presentó una *Demanda* sobre cobro de dinero contra Caribbean Anesthesia Services, Inc. t/c/c Dorado Health, Inc. (CAS), el Dr. Alvin Ramírez y otros (en adelante, codemandados).

En lo aquí pertinente, el 9 de febrero de 2023, CHC, Dorado Health, Inc. y el señor José Quirós (en adelante, señor Quirós)[2], presentaron una *Moción Conjunta Informativa sobre Mociones de Sentencia Sumaria en Cumplimiento de Orden y para su Adjudicación.* Mediante la referida moción, expresaron que, el 27 de noviembre de 2013, CHC presentó una *Moción Solicitando Sentencia Sumaria,* a la cual los codemandados se opusieron el 7 de marzo de 2014 mediante *Oposición a "Moción Solicitando Sentencia Sumaria".* El 20 de junio de 2214, CHC presentó *Réplica a Oposición a Solicitud De Sentencia Sumaria,* mientras que el 10 de julio de 2014, los codemandados presentaron *Dúplica a Réplica a Oposición a Solicitud de Sentencia Sumaria.* Expresaron que, posteriormente, el 19 de agosto de 2014, los codemandados presentaron su *Solicitud de*

---

[2] Este, como codemandado.

*Sentencia Sumaria,* y CHC presentó su *Oposición a Moción de Sentencia Sumaria,* el 25 de noviembre de 2014. Por su parte, los codemandados presentaron *Réplica a Oposición a Solicitud de Sentencia Sumaria,* el 14 de enero de 2015. Indicaron que, las aludidas mociones de sentencia sumaria fueron sometidas para la consideración del Tribunal de Primera Instancia. Explicaron que, el 3 de mayo de 2016, el foro *a quo* emitió *Sentencia* en la que desestimó la controversia de epígrafe por falta de legitimación activa de CHC. No obstante, nada dispuso sobre las solicitudes de sentencia sumaria y sus oposiciones. Dicha *Sentencia* fue revocada por este foro mediante *Sentencia* emitida el 10 de julio de 2018 y se devolvió el caso al foro primario para la continuación de los procedimientos. Surge de la moción conjunta que, el 14 de noviembre fue celebrada una vista de los estados de los procedimientos, donde el Tribunal de Primera Instancia expresó que, las mociones de sentencias sumarias habían sido adjudicadas con la desestimación y, que lo que procedía era el juicio. Sin embargo, fue la postura de las partes que, dichas mociones no fueron atendidas por medio de la *Sentencia* del 3 de mayo de 2016. Las partes le solicitaron al foro de primera instancia que, resolviera las mociones dispositivas pendientes e hiciera las determinaciones de hechos correspondientes.

El 13 de marzo de 2023, el foro primario emitió *Orden*, donde, entre otras cosas y a lo aquí pertinente expresó lo siguiente:

1. A la *Oposición a Impugnación y Solicitud de Desestimación* presentada por la parte demandante, por conducto de su representación legal el 23 de enero de 2023, el Tribunal dispone:

   **Se atenderá junto con otras mociones de desestimación.**

2. A la *Moción de Extensión de Término* presentada por la parte demandante por conducto de su representación legal el 3 de febrero de 2023, el Tribunal dispone:

**Académica**.

3. A la *Moción de Desestimación* presentada por la codemandada Vanessa del Carmen Leuenberger de Jesús por conducto de su representación legal el 6 de febrero de 2023, el Tribunal dispone:

**Se conceden 5 días finales a la parte demandante para expresarse. De no comparecer en ese término se dará por sometido**.

4. A la *Moción Conjunta Informativa sobre Mociones de Sentencia Sumaria en Cumplimiento de Orden y para su Adjudicación* presentada por la parte demandante Caribbean Hospital Corporation Inc., y los codemandados, Dorado Health, Inc. y el Sr. José Quirós por conducto de sus respectivas representaciones legales el 9 de febrero de 2023, el Tribunal dispone:

**Enterada. Se evaluarán mociones y el Tribunal dispondrá**.

Respecto a varias mociones de impugnación de emplazamientos y sus oposiciones, el foro primario las dio por sometidas y dispuso que se atenderían conjuntamente.

Transcurrido el tiempo sin que nada se dispusiera de las mociones dispositivas presentadas por las partes, el 19 de marzo de 2025, CHC presentó *Moción para que se Resuelvan Asuntos Pendientes*. En dicha moción, la parte peticionaria sostuvo que, en el caso de marras quedaban varias mociones por resolver, en específico, una solicitud de desestimación presentada por la señora Vanessa Leuenberger con fecha de 6 de febrero de 2023 y la oposición a esta presentada por CHC. Indicó que, el 23 de febrero de 2024, la señora Vanessa Leuenberger presentó una moción donde reiteró su solicitud de desestimación. Por su parte, CHC presentó moción el 12 de marzo de 2024, donde sugirió que la moción interpuesta por la señora Leuenberger se tuviera por no puesta. Le solicitó al foro *a quo* que resolviera tales asuntos pendientes, así como otros que quedaran por resolver.

El 1ro de julio de 2025, CHC presentó *Moción Reiterando Solicitud para que se Resuelvan Asuntos Pendientes*.

Así las cosas, el 15 de septiembre de 2025, CHC compareció ante este Tribunal de Apelaciones mediante *Petición de Mandamus*. Por medio de su recurso, arguyó que, el Tribunal de Primera Instancia aún no había resuelto las mociones pendientes, pese a múltiples solicitudes de que se resolvieran. Por motivo de lo anterior, nos solicitó que expidiéramos el auto de *mandamus* y le ordenáramos a la primera instancia judicial a resolver a la brevedad posible todos los asuntos sometidos ante su consideración.

Mediante *Resolución* emitida el 18 de septiembre de 2025, le ordenamos a la Hon. Jueza Larissa N. Ortiz Modestti, del Tribunal de Primera Instancia, Sala de San Juan, que en un término a vencer el viernes 26 de septiembre de 2025, mostrara causa por la cual no debíamos expedir el auto de *mandamus* solicitado.

El 26 de septiembre de 2025, compareció la Hon. Jueza Larissa N. Ortiz Modestti mediante *Comparecencia Especial en Torno a Resolución*. En primer lugar, sostuvo que, no recibió notificación alguna de las partes respecto al recurso de *Mandamus* instado ante este Tribunal, y por ende, desconocía su contenido. Aseguró que, al momento de la moción no existían asuntos pendientes de disposición en el caso de epígrafe. Adujo que, el 22 de septiembre de 2025, fue emitida una *Sentencia Parcial* en torno a las cuatro mociones de desestimación. Asimismo, el 24 de septiembre de 2025, el foro *a quo* emitió una *Sentencia Parcial* sobre *Demanda Contra Coparte de Alvin Ramírez Ortíz v. Dorado Health, Inc.* y una *Orden* para disponer de otros asuntos.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Mandamus

La acción de *mandamus* está regida por la Regla 54 de Procedimiento Civil, 32 LPRA, Ap. V, R. 54 y el Artículo 649 del

Código de Enjuiciamiento Civil, 32 LPRA sec. 3421 y siguientes. El *mandamus*, según lo define nuestra legislación, "es un auto altamente privilegiado dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal Superior de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes". 32 LPRA sec. 3421; *Kilometro O, Inc. v. Pesquera López*, 207 DPR 200, 214 (2021); *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972 (2020); *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 427 (2020); *Noriega v. Hernández Colón*, 135 DPR 406, 447 (1994). Es decir, mediante este, se exige el cumplimiento de un deber ministerial dentro de las atribuciones o deberes del cargo que ocupa. *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214. El "deber ministerial se refiere a un mandato específico que no admite ejercicio de discreción en su cumplimiento". *Íd.*; *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 985; *Aponte Rosario et al. v. Pres. CEE II*, supra, págs. 427-428. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. 32 LPRA sec. 3421.

Como bien expresa la ley, el auto de *mandamus* es uno "altamente privilegiado". Esto significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214. Dicha expedición "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 266 (2010). Lo que significa que, solo deberá expedirse cuando la parte peticionaria carece de "un recurso adecuado y eficaz en el curso ordinario de la ley". 32

LPRA sec. 3423; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214; *Aponte Rosario et al. v. Pres. CEE II*, supra, pág. 428. La procedencia del *mandamus* depende inexorablemente del carácter del acto que se pretende compeler mediante dicho recurso. D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Ed. U.I.A., 1996, pág. 107. En resumen, solo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio. *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454-455 (2006); *Báez Galib y otros v. CEE*, 152 DPR 382 (2000).

El *mandamus*, "aunque es un remedio en ley, participa de la índole de los de equidad". Por consiguiente, algunos principios rectores de los recursos de equidad, como los que gobiernan el *injunction*, son aplicables al auto de *mandamus. AMPR v. Srio. Educación, ELA*, supra, pág. 263.

El requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado. Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *AMPR v. Srio. Educación, ELA, supra*, págs. 263-264. Por tal razón, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar el recurso. *Id.*

Ahora bien, "antes de radicarse la petición de *Mandamus*, la jurisprudencia requiere, como condición esencial, que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; ó 2) cuando el deber que se pretende exigir es uno de carácter público,

a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario". *Noriega v. Hernández Colón,* supra, págs. 448-449.

Entre los factores a tomarse en consideración cuando se solicita de un tribunal la expedición de un auto de *mandamus* se encuentran: el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar envueltos; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros. *AMPR v. Srio. Educación, ELA, supra,* pág. 268; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 215.

En fin, el Tribunal Supremo de Puerto Rico, expresó en *Díaz González, v. Tribunal Superior,* 102 DPR 195, 199-200 (1974), citando a *Dávila v. Superintendente de Elecciones*, 82 DPR 264, (1960), pág. 283, lo siguiente:

> "Para que deba expedirse un auto de *mandamus,* sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto 'altamente privilegiado,' según expresa la ley de su creación, 32 L.P.R.A. sec. 3421 , y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial.
>
> En otras palabras, el remedio no se concede *ex debito justitiae* y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto."

Cabe destacar que, nuestro más Alto Foro ha expresado que, le "compete a los tribunales determinar si el deber ministerial surge o no de la ley aplicable", puesto que, "no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". *Romero,*

*Valentín v. Cruz, CEE et al.*, supra, pág. 986 citando a *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 418 (1982). Tal determinación deberá "surgir del examen y análisis de todos los elementos útiles a la función interpretativa". *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 986 citando a *AMPR v. Srio. Educación, ELA*, supra, pág. 264.

El Reglamento de este Tribunal de Apelaciones, rige los procedimientos de *mandamus* en las Reglas 54 y 55(J), las que disponen lo siguiente:

> Los procedimientos de hábeas corpus y *mandamus* se regirán por la reglamentación procesal civil, por las leyes especiales pertinentes y por estas reglas.[3]

> La parte peticionaria emplazará a todas las partes a tenor con las disposiciones de las Reglas de Procedimiento Civil y de las leyes pertinentes. Cuando se trate de un recurso de *mandamus* dirigido contra un Juez o Jueza para que éste o ésta cumpla con un deber ministerial con relación a un caso que esté pendiente ante su consideración, el peticionario no tendrá que emplazar al Juez o Jueza de acuerdo con las disposiciones pertinentes de las Reglas de Procedimiento Civil. En estos casos, bastará con que el peticionario notifique al Juez o Jueza con copia del escrito de *mandamus* en conformidad con lo dispuesto en la Regla 13(B) de este Reglamento. También deberá notificar a las otras partes en el pleito que originó la petición de *mandamus* y al tribunal donde este se encuentre pendiente, en conformidad con la Regla 13(B).[4]

### B. Jurisdicción

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *R&B Power. Inc. v. Junta de Subastas ASG*, 213 DPR 685,

---

[3] Regla 54 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.
[4] Regla 55(J) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

698 (2024); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020).[5]

Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *R&B Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022).[6] La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Mgtm. Group. v. Oriental Bank*, 204 DPR 374 (2020).[7]

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015); *R&B Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Souffront v. AAA*, supra, pág. 674; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394-395 (2022).

Cónsono con lo anterior, la Regla 83(C) del Reglamento del Tribunal de Apelaciones[8], confiere facultad a este Tribunal para a iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

## C. Academicidad

Como es sabido, los tribunales revisores solo podremos resolver los casos que sean justiciables. *Bhatia Gautier v.*

---

[5] Véase *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).

[6] *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[7] *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.*, 200 DPR 254, 268 (2018); *Souffront v. AAA*, 164 DPR 663, 674 (2005).

[8] Regla 83(C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

*Gobernador*, 199 DPR 59, 68 (2017); *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR ___ (2024).[9]   La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007); *Bhatia Gautier v. Gobernador*, supra, pág. 68; *Buxó Santiago v. ELA et als.* supra.   Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

Una de las manifestaciones concretas del principio de justiciabilidad es la doctrina de academicidad. *Smyth, Puig v. Oriental Bank*, supra, pág. 78.  Sobre el particular, nuestro más Alto Foro ha reconocido que los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución.  Esto es, el foro judicial no puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el

---

[9] Véase también *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011).

transcurso del tiempo. *Pueblo v. Pagán Medina,* 177 DPR 842, 844 (2010); *Buxó Santiago v. ELA et als.* supra; *Super Asphalt v. AFI y otro,* supra, pág. 816. Asimismo, deberán ser evaluados los eventos anteriores, próximos y futuros, a los fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Íd.*

Una vez se determina que ha desaparecido el carácter adversativo entre los intereses de las partes involucradas, los tribunales pierden su jurisdicción en el pleito y, por tanto, deben abstenerse de considerar el caso en sus méritos. Con esta limitación sobre el poder de los tribunales, se persigue evitar el uso innecesario de los recursos judiciales y obviar pronunciamientos autoritativos de los tribunales que resulten superfluos. (Citas omitidas). *Smyth, Puig v. Oriental Bank,* supra, pág. 78; *Super Asphalt v. AFI y otro,* supra, pág. 816.

Sin embargo, existen varias excepciones a la doctrina de academicidad: a saber, cuando se plantea una cuestión recurrente y que por su naturaleza evade o se hace muy difícil la adjudicación ante los tribunales; en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal; si la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia; en los casos en que el tribunal ha certificado un pleito de clase y la controversia se tornó académica para un miembro de la clase, mas no para el representante de la misma; o aquellos casos que aparentan ser académicos, pero que en realidad no lo son por sus consecuencias colaterales. *El Vocero v. Junta de Planificación,* 121 DPR 115 (1988); *Smyth, Puig v. Oriental Bank,* supra, pág. 78.

Como corolario de lo anterior, la Regla 83 (B)(5) y (C) del Reglamento del Tribunal de Apelaciones expone lo siguiente:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>
> [. . . . . . . .]

(5) Que el recurso se ha convertido en académico.

(C)   Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.[10]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

Como Tribunal Apelativo, en primer lugar, nos corresponde auscultar nuestra jurisdicción para atender la controversia ante nuestra consideración.

Según reseñáramos, el 15 de septiembre de 2025, CHC compareció ante este foro revisor mediante *Petición de Mandamus*. En su petición, nos solicitó que, expidiéramos el auto de *mandamus* y le ordenáramos al Tribunal de Primera Instancia a resolver a la brevedad posible todos los asuntos sometidos ante su consideración.

A estos efectos, mediante *Resolución* emitida el 18 de septiembre de 2025, le ordenamos a la Jueza Larissa N. Ortiz Modestti, del Tribunal de Primera Instancia, Sala de San Juan, a mostrar causa por la cual no debíamos expedir el auto de *mandamus* solicitado.

En cumplimiento con lo ordenado, la Jueza Larissa N. Ortiz Modestti presentó *Comparecencia Especial en Torno a Resolución*. Por medio de la anterior, sostuvo que, a la fecha de su comparecencia no existían asuntos pendientes de disposición en el caso de epígrafe. Puesto que, el 22 de septiembre de 2025, fue emitida una *Sentencia Parcial* en torno a las cuatro mociones de desestimación. De igual manera, el 24 de septiembre de 2025,

---

[10] Regla 83 (B)(5) y (C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

emitió una *Sentencia Parcial sobre Demanda Contra Coparte de Alvin Ramírez Ortíz v. Dorado Health, Inc.* y una *Orden* para disponer de otros asuntos. Dichas sentencias parciales y la orden fueron acompañadas a la *Comparecencia Especial en Torno a Resolución.*

Al revisar las sentencias parciales y la orden dictada por el Tribunal de Primera Instancia pudimos constatar que, en efecto, no hay asuntos pendientes ante dicho foro. Puesto que, las mociones pendientes al momento de la *Petición de Mandamus* fueron resueltas por el foro primario en la *Sentencia Parcial* emitida el 22 de septiembre de 2025, en la *Sentencia Parcial sobre Demanda Contra Coparte de Alvin Ramírez Ortíz v. Dorado Health, Inc.* y en la *Orden* emitida el 24 de septiembre de 2025. Consecuentemente, la *Petición de Mandamus* se tornó académica.

De acuerdo al derecho reseñado, los tribunales revisores sólo podemos resolver los casos que sean justiciables.[11] Una controversia no es justiciable cuando se torna académica. En lo pertinente, nuestra última instancia judicial ha reconocido que, los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución.[12] Los tribunales no pueden entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. En tales casos, la Regla 83(B)(5) y (C) del Reglamento de esta Curia, dispone que, una parte puede solicitar la desestimación de un recurso, o *motu proprio,* el Tribunal podrá desestimar el mismo por falta de jurisdicción.[13]

---

[11] *Super Asphalt v. AFI y otro*, supra, pág. 815; *Aponte Rosario et al. v. Pres. CEE II*, supra; *Bhatia Gautier v. Gobernador*, supra, pág. 68; *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 932.

[12] *Super Asphalt v. AFI y otro*, supra, pág. 816; *Bhatia Gautier v. Gobernador*, supra, pág. 73.

[13] Regla 83 (B)(5) y (C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

Dado a que la *Petición de Mandamus* se tornó académica, carecemos de jurisdicción para atenderla. Reiteramos que, cuando un tribunal carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos.[14]

**IV**

Por los fundamentos que anteceden, se desestima el recurso de epígrafe por falta de jurisdicción al tornarse académico.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] *Allied Management Group, Inc. v Oriental Bank*, supra, págs. 386-387; *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* supra, supra, 268; *Suffront v. A.A.A.,* supra, pág. 674.